## HUDSON v. BARRETT.

A Court of Equity will entertain a bill for an account filed by one partner against his associate, where the bill does not contemplate a dissolution of the partnership, and a final winding-up of the affairs of the association. Such is the law as applicable to the commercial relations existing in Pennsylvania.

Where a bill avers the existence of the partnership, it is not necessary to state the circumstances attending the continuance of it, after the first lease of the premises where the partnership was carried on had expired. It is not necessary now for the plaintiff to aver in his bill an offer to pay the balance, if found against him, on a bill for an account.

Where, by the terms of the articles of partnership, the acting partner is bound to render to the plaintiff an account monthly, and pay over his share of the profits, it is not necessary to aver a demand of such account in the bill.

*Jan.* 19. THIS was a bill in equity, filed by John Hudson against Thomas H. Barrett, alleging that, on the 30th day of June, 1845, the parties had entered into articles of co-partnership, for the purpose of carrying on the business of a gymnasium ; that they entered upon and carried on the business pursuant to said agreement, and had ever since continued the same, and that it still continues ; that the said Barrett had been in the habit of receiving all sums of money on the partnership account, and that he had not entered all such partnership transactions in the books of the firm, but had only entered a part of the same, and had kept the plaintiff in ignorance in regard to many of the same. That notwithstanding the provisions in articles of partnership, that the account should be duly stated, and one-half of the net profits of said business paid over to the plaintiff each and every month, yet the said defendant had not stated and made up the partnership account, nor paid over to the plaintiff one-half of the net profits of said partnership, since the 1st day of April, 1848, to the filing of the bill.

It was also charged, that, although it was provided in the articles of partnership that the said Barrett would take the care and management of the business, and devote his care, labour, and *diligence* in the superintendence thereof, yet, without consulting the plaintiff, he had at various times since the formation of the partnership been engaged in the management, care, and superintendence of another or like business at Cape May, in the state of New Jersey, from which it was believed he had derived large profits, without accounting therefor to the plaintiff, and to the great neglect and injury of the business of the firm at Philadelphia.

It was insisted in the bill, that said Barrett ought to account

for all the partnership dealings since the 1st day of April, 1848, unto the time of filing the bill, and also for all the business carried on at Cape May. And it was charged that, upon a settlement of the accounts, there was a considerable balance due from said Barrett to the plaintiff, in respect to their partnership dealings.

The bill prayed for an account of all the partnership dealings and transactions, also of the profits and of the moneys received, the plaintiff averring his willingness to account for all his acts in relation thereto. There was also a prayer for a decree that the money be paid on taking the account of whatever might be found due, and a prayer for general relief.

To this bill there was a general demurrer, and causes added for the same.

The case was argued on bill and demurrer, by *Bleight* for plaintiff, and *M'Intyre* for the defendant. It was argued in support of the demurrer, that the bill simply prayed an account, but did not ask for a dissolution of the partnership, and therefore the Court would not entertain the suit. And cited Wallworth *v.* Holt, 4 Mylne & Craig, 691–630 ; Story's Equity, §§ 665–6 ; 2 Ves. & B. 329 ; 4 Sim. 8 ; 4 Madd. 143 ; 2 Mylne & Keen, 68 ; 4 Russell, 562.

It was also contended that the bill did not aver that the plaintiff had demanded the payment of the profits or an account.

It was argued by the plaintiff's counsel that it was not necessary that the bill should pray for a dissolution of the partnership; that the plaintiff was entitled to an account monthly, while the association existed, and to the payment over of one-half of the profits; and cited Story's Equity, 671; Chitty Genl. Prac. 851; Richards *v.* Davis, 2 Russell & Mylne, 347 ; 4 Mylne & Craig, 620, 640 ; Eq. Drafts, 320.

And it was further contended, that, inasmuch as the defendant was the active partner, and was bound by the articles of partnership to render an account monthly and pay over the one-half of the profits, no demand for an account was required before filing the bill. That it was the duty of the defendant to have rendered an account without demand.

The opinion of the Court was delivered by

KING, President.—The demurrer to this bill presents a question on which the English Chancery has been much divided, and on which conflicting decisions have been made by the most eminent

equity Judges.  Neither in this state, nor in any other in the Union, as far as I have been able to ascertain after a most diligent search, has this question ever been directly presented for adjudication.  All the English decisions on the subject are posterior to the Revolution.  Unfettered, therefore, by any precedent of absolute obligation, we can resolve the point involved in the cause on principle.  It may be stated thus: Will or will not a Court of Equity entertain a bill for an account, filed by one co-partner against his associate, where the bill does not contemplate a dissolution of the partnership and a final winding-up of the affairs of the association ? The negative of this proposition seems first to have been directly intimated by Lord Eldon, in Walters v. Taylor, 15 Vesey, 24, in which he says, that, "if partners cannot agree, each excluding the other, that state of circumstances, operating as a dissolution, puts an end to the partnership, and the Court interposes in *this* way: that it will wind up the concern, and with that view will appoint a person to collect and manage, until an end can actually be put to the concern."  This case was ruled in 1808.  The question came more directly before Lord Eldon in Forman v. Homfray, 2 Vesey & Beames, 229, decided in 1813, and there the point is directly decided, that no relief could be granted on a bill by one partner against another, not praying for a dissolution, the Chancellor observing, "that, if a partner can come here *for an account merely pending* the partnership, there seems to be nothing to prevent his coming annually."

In Coleman v. Marshall, 2 Jacobs & Walker, 266, decided in 1821, although the present question was not the direct one for decision, Lord Eldon very clearly asserts his former opinions.  "It is," says he, "quite a different thing, and would be quite a new head of equity, for the Court to interfere where one party violates a *particular* covenant, and the party *does not choose to put an end to the partnership;* in that way there may be a separate suit, and a perpetual injunction in respect of each covenant.  That is a jurisdiction we have *never* directly entertained."

In the year 1830, the question again came up before Vice-Chancellor Shadwell, in Loscombe v. Russel, 4 Simons, 8.  The bill, like the present, was filed by one partner against another, and simply prayed an account, not contemplating a dissolution of the partnership.  The bill was generally demurred to for want of equity, on the distinct ground that the Court would not entertain such a bill unless a dissolution was contemplated.  The Vice-Chancellor, Sir Launcelot Shadwell, sustained the demurrer, asserting

with respect to the law of the Court on the subject, "that there was no instance of an account being decreed of the profits of a partnership on a bill which did not pray a dissolution, but contemplated the subsistence of the partnership." In the case of Kneble v. White, 2 Younge & Collyer's Exch. Rep. 15 (1836), this point again was presented incidentally to the Barons of the Exchequer. In pronouncing the judgment of the Court, Baron Alderson observes upon the contrariety of the past decisions, and from this cause conceived himself obliged to consider the case upon principle. The reasoning of the Judges, who had previously denied the power of the Court to entertain a bill for an account between partners where no dissolution was contemplated, seemed to him most satisfactory, and was adopted by him, apparently against his original impressions.

Although the assertion of Vice-Chancellor Shadwell, in Loscombe v. Russell, that there was no instance of a decree for an account of the profits of a partnership on a bill which did not pray for a dissolution, was literally true; yet eleven years previous (1819), his predecessor, Sir John Leach, had, in Harrison v. Armitage, 4 Madd. 144, asserted his clear opinion that one partner might file such a bill against another. It is true the point was not directly decided in this case, because the evidence did not establish a partnership in fact. In Richards v. Davies, 2 Russel & Mylne, 347, decided in 1831, the question came again before Sir John Leach, then Master of the Rolls, and he directly ruled that the Court would direct an account of past partnership transactions, though the bill did not pray a dissolution. So stood the subject in England, when Judge Story published the second edition of his Equity Jurisprudence. In the text of the 671st section of that learned work, he seems to have considered that it was only under special circumstances that equity would interpose and decree an account, if there was not an actual or contemplated dissolution, so that the affairs of the partnership might be wound up. In his note to that section, he refers to the English authorities, and concludes with saying that the point must be held to be still open for further consideration.

A question of such vast practical importance, in a commercial country like England, could not long be suffered to rest in this state of incertitude. It touched too closely the great commercial interests, now the directing influences which control all the springs of that entrepot of the world. Accordingly, it presents itself again, in Wallworth v. Holt, 4 Mylne & Craig, 619, decreed, in 1840.

53

Although, perhaps, the precise point adjudicated is not the present, yet it is so near it, that the remarks of Lord Cottenham on the question may be considered as a direct ruling of it.  Among other things, he observes, that the result of two rules pressed on the Court : viz. the one binding the Court to withhold its jurisdiction, except upon bills praying for a dissolution, and the other requiring that all the partners should be parties to a bill, would be, that the doors of the Court would be shut, in all cases, in which partners and shareholders are too numerous to be made parties; which, in the present state of the transactions of mankind, would be an absolute denial of justice to a large portion of the subjects of the realm, in some of the most important of their affairs ; "and that this result was quite sufficient to show that such could not be the law."  And, finally, he observes, "that the SUPPOSED rule, that the Court will not direct an account of partnership dealings and transactions, except as consequent upon a dissolution, though true in some cases, and to a certain extent, has been supposed to be more generally applicable, than it is upon authority, and ought to be upon principle ; and that this SUPPOSED rule was directly opposed to the decision of Sir John Leach, in Harrison v. Armitage and Richards v. Davis."

The views of Lord Cottenham would seem to have settled the question in England, for in some subsequent cases which I have found, it is so treated.  Thus in Richardson v. Hastings, 7 Beavan's Rep. 301 (1844), Lord Langdale, the present Master of the Rolls, observes : "At one time the Court would not entertain a suit between parties in relation to partnership transactions, except upon a bill to wind up the partnership.  That this is not now the rule of the Court, and that the cases which have been referred to, corroborated the view that the Court will, as between the partners, entertain a bill to settle a question which may arise between them, without proceeding to wind up the concerns and affairs of the partnership."

This case is found reviewed at page 313 of the same book, where Lord Langdale reasserts the modern doctrine.  "It was," says he, "at one time supposed that in consequence of the rule that complete justice must be done with respect to the subject-matter, the Court could not, and would not, interfere at all between partners unless the partnership was to be dissolved and finally wound up and settled, and that there were several conflicting authorities in the books on the subject ; different Judges having entertained strong opinions and different views on the question.  That he had noticed on the former

occasion that it *now* appears that there is no such rule." The point again rose in Fairthorne v. Westen, 3 Hare's Ch. Rep. 387, 391, determined also in 1844, by the present Vice-Chancellor of England, Sir James Wigram. He observed "that the argument of the defendant turned wholly upon the proposition that a bill praying a particular account is demurrable unless the bill seeks and prays a dissolution of the partnership: in support of which the case of Loscombe v. Russel, and the cases there cited, were relied upon. That there might be cases to which the rule there laid down would apply, he was not prepared to deny, but the law as laid down in that case was never admitted to be a rule of universal application :" and he adds " that it is essential to justice, that no such universal rule should be sustained."

These cases very clearly show that the opinions of Lord Eldon, Vice-Chancellor Shadwell, and the Court of Exchequer, as expressed by Baron Alderson, on which the defendant seeks to support this demurrer, have been distinctly overruled, and are not general rules of action at this time in Westminster Hall. As was observed at the outset of this judgment, none of the cases cited for or against the supposed rule invoked by the defendant, are of binding authority on this Court; and derive any weight they may possess, simply from the inherent force of the reasoning on which they are predicated. Let us test them by this rule. Lord Eldon and those who follow him place their objections on the ground of inconvenience and fruitless multiplication of litigation. In Foreman v. Homfray, and Coleman v. Marshall, Lord Eldon says, " If such bills should be entertained, there was nothing to prevent such a plaintiff from coming annually ; and that by means thereof there might be a separate suit and a perpetual injunction in respect of every breach of a partnership covenant. Sir Launcelot Shadwell supposes, that after such an account was taken between continuing partners, and a balance found in favour of the plaintiff, it would be competent for the defendant to file a supplemental bill, showing that since the account had been taken, a balance had become due him from the plaintiff; and thus the matter might be pursued with endless charges ; and supplemental bills might be filed every year that the partnership continued ; and a balance would never be ascertained, till the partnership expired, or the Court put an end to it. And it is upon analogous reasoning that Baron Alderson rests his opinion in Kneble v. White. These, it must be admitted, are serious difficulties in the way of the proceeding. But in the conduct of human affairs we are often forced to elect between evils ;

and the choice should be determined by that course calculated most to advance justice, secure the faithful performance of contracts, and render the breach of them the least inviting, although the course proposed to reach these desired ends may not be free from difficulties and objections. The answer of Sir John Leach to this argument is this: "It is objected that if such a suit is entertained, the defendant may be vexed by a new bill whenever new profits accrue: but what right has the defendant to complain of such new bill, if he repeats the injury of withholding what is due the plaintiff?" This, I know, answers but half of the argument, and does not meet the case put by Sir Launcelot Shadwell, where, in the subsequent dealing, the defendant in the original suit becomes the creditor partner, and claims to deduct, from the first balance due by him, the favourable balance since accrued in his favour. The answer to this state of things would be, that if the original plaintiff should subsequently practise the wrong he originally complained against, by refusing to give such a credit, he should, and would be made to bear the expenses, flowing from his refusal to do the justice he had himself demanded. But let us look at the results of refusing our aid to a party who asks an account from his co-partner, of partnership profits, unless he consents to dissolve the partnership concern. Do we not give a party fraudulently inclined, the opportunity of breaking up a profitable concern when he pleases, by simply refusing to account? Do we not thus, in a partnership where capital and skill united have made a business profitable, give either the capitalist or the expert the means of ejecting his associate, whenever the interest of the one, or the other, would render that course desirable? Would we not by this means prevent the formation of associations where skill, capital, and enterprise might develope sources of productive industry, alike beneficial to the community and the associates, by declaring them to be without the pale of effective legal protection? Would not this be the shutting of the door of this Court, and, in the present state of the transactions of mankind, be an absolute denial of justice to a large portion of the citizens of this Commonwealth, in some of their most important affairs?

To these interrogatories, it would seem to me that no other than affirmative answers can be given. In cases of silent partnerships, where the active partner is rarely the capitalist, the evil workings of this rule would be intolerable, as they would also specially be under our law of limited partnership, where the capitalist partner is excluded from active participation by positive law, and

where he has little if any means of ascertaining the veritable condition of the concern, if unjustly denied him, except through the intervention of this Court. If such a partner cannot obtain this aid except on the terms of dissolving the partnership, few prudent men would enter into such an engagement; where they are certain of hazarding their investment, and where their continuance in the business, if profitable, really must depend on the pleasure of the active associate, which must be the case if the doctrine contended for in this case is the law of Pennsylvania.

It is the duty of all Courts, and specially so of a Court of Equity, to adapt its practice and course of proceeding as far as possible to the existing state of society, and to apply its jurisdiction to all those new cases, which, from the progress daily making in the affairs of men, must continually arise, and not, from too strict an adherence to forms and rules established under very different circumstances, decline to administer justice and to enforce rights, for which there is no other remedy: Taylor *v.* Salmon, 4 Mylne & Keen, 141. The principles of equity are broad and comprehensive. They sprang into existence as a separate system from the requisitions of a progressive civilization; to the necessities of which the narrow technicalities of the common law afforded no adequate expansion. Though based, as every system of philosophical jurisprudence must necessarily be, on defined principles, still, in its application to the affairs of men, equity ever looks to great principles, rather than special modes of procedure, which latter must always give way, when they come into conflict with the application of those principles to cases embraced within them.

The other causes of demurrer may be disposed of in a more summary manner. The existence of the partnership at the filing of the bill, is sufficiently averred. It was not necessary to load the record with the details of the circumstances of the contiuance of it, after the first lease of the premises, where the partnership business was carried on, had expired. According to the case of Columbian Government *v.* Rothschild, 1 Simons, 24, it seems that, although the Court had originally required that a bill for an account should contain an offer on the part of the plaintiff to pay the balance, if found against him, this is not now considered necessary. As to the objection taken that there is no direct allegation of a demand for an account made by the plaintiff of the defendant, before filing his bill, this is answered by the fact, that, according to the true construction of the partnership articles, the defendant, who was the managing part-

2 N

ner, was bound to render his accounts monthly, and his default for the length of time set forth in the bill gave the plaintiff the clear right to apply to this Court.

The demurrer is overruled.