## Wm. F. Searight, Assignee, v. Carlisle Deposit Bank et al., Appellants.

*Equity — Hearing—Jurisdiction—Remedy at law.*

A bill in equity for an account will not be dismissed although there may be an adequate remedy at law, after the defendant has permitted the case to go to a master, and all the testimony has been taken, and the report of the master filed.

*Promissory notes—Collateral—Payment.*

The indorsers of a promissory note, who had paid the note, have a right to hold the collateral deposited with the payee, but the payment of the note does not make them owners of the collateral. They have no right to use it for any purpose not authorized by the original hypothecation.

The maker of a promissory note deposited with the payee certain stock as collateral. In the maker's absence, and without his knowledge or

consent, the indorsers substituted their own notes for the original note, which was marked "paid," and the payee retained the collateral as security for the substituted notes. In a subsequent accounting between the indorsers and the maker of the original note the indorsers were allowed credit for the amount of the note. *Held*, that the maker was entitled to recover the collateral from the payee.

Argued April 25, 1894. Appeal, No. 179, Jan. T., 1894, by defendants, from decree of C. P. Cumberland Co., Sept. T., 1891, No. 2, on bill in equity in favor of plaintiff, William F. Searight, assignee of G. A. Searight. Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ. Affirmed.

Bill in equity for an account.

The bill prayed for an account of certain stock deposited as collateral for the payment of a promissory note made by G. A. Searight. The case was referred to Edward B. Watts, Esq., as master, who recommended a decree in favor of plaintiff. Exceptions to the master's report were dismissed by the court, in the following opinion, by STEWART, P. J., 39th district, specially presiding:

"This case has proceeded too far, with the defendant's acquiescence, to be defeated now by an objection to the forum in which it was begun. Instead of a demurrer, there was an answer to the bill, followed by a reference to the master and the taking of testimony. Only at the argument was the question of jurisdiction raised. If the case were one clearly not cognizable in equity, or one in which equity forms were inadequate for the purposes of justice, we would feel bound to arrest it even at this late stage ; but no such conditions are presented. At most it is only questionable whether the bill discloses a case for which no adequate remedy at law exists. It leaves much to be supplied by inference that should have been explicitly stated. Had the question been raised on a demurrer at the proper time we would have had nothing before us but the bill, and we might have declined to draw the inferences which were needed to establish the plaintiff's right to affirmative relief in equity ; but with the testimony all taken and before us, the facts as then disclosed are to be considered in connection with the averments of the bill when the jurisdiction is questioned, and these certainly go far towards supplying what might have

been regarded as fatal omissions in the bill itself. It is possible that in a common law action the plaintiff could have accomplished all that this equity proceeding will afford, but at the same time it is manifest that the defendant forfeits no advantage in the latter which would have availed it in the former. There is then neither rule nor reason requiring us to entertain this objection which is now urged by the defendant to the jurisdiction.

" The master's findings of facts are abundantly sustained by the evidence, and they are presented in such a clear and orderly sequence that the history of the case is made easily intelligible. The controlling facts, however, are few, and with respect to these there is no dispute.

" The Carlisle Deposit Bank was the holder of two notes drawn by G. A. Searight, one for $16,000, indorsed by F. W. Searight and George P. Searight, and one for a balance of $2,169.17, indorsed by F. W. Searight. As collateral for this indebtedness, G. A. Searight, on Jan. 24, 1887, placed with the bank some 1263 shares in the capital stock of The Searight Cattle Co. Some time after the maturity of these notes it was arranged between the indorsers, F. W. Searight and George P. Searight, the bank and Joseph A. Stuart, that the indorsers should lift the notes, by giving their own notes for the amount with Joseph A. Stuart as indorser thereon, Stuart consenting to become indorser on condition that, in addition to certain other security he was to receive, the 1263 shares of stock in the Cattle Company, originally placed by G. A. Searight, should remain pledged. Pursuant to this arrangement, on the 6th of April, 1887, F. W. Searight and George P. Searight delivered to the bank two notes drawn by themselves and indorsed by Joseph A. Stuart, each for $9,678.99 and payable Jan. 1, 1888. Thereupon the bank marked the G. A. Searight notes as paid by the indorsers and delivered their own, but retained the cattle stock in accordance with the arrangement it had made to have it as collateral for the substituted notes. G. A. Searight, who was the owner of the stock, and who had originally pledged it, was a stranger to all these late transactions. He was absent at the time, in Texas, and had no knowledge of what was being done with respect to the notes or stock.

" Subsequently, on the 13th of May, 1887, in a settlement of accounts between G. A. Searight, F. W. Searight and Geo. P. Searight, who together had been largely interested in the cattle business at Austin, Texas, F. W. and Geo. P. Searight presented against G. A. Searight the two notes of his upon which they were indorsers and which they had lifted from the Carlisle Deposit Bank, and in the settlement received credit therefor. They marked the notes paid and surrendered them to G. A. Searight. The bona fides of this settlement, so far at least as G. A. Searight was concerned therein, has not been assailed. He paid these notes in full to his indorsers, who had lifted them; prima facie, he was thereupon entitled to receive back the collateral which he had pledged therefor. Upon this collateral, and under the terms of its original hypothecation, the bank, in January, 1889, received a dividend of $4,495.32, resulting from the sale of the property of the Searight Cattle Company. This money it applied as a credit upon the notes of F. W. and Geo. P. Searight, indorsed by Stuart, with which the notes of G. A. Searight had been lifted. That this appropriation was in accordance with the understanding between the bank and the parties to the new notes is not disputed, but G. A. Searight refuses to acquiesce therein, and now through his assignee demands that the bank shall be made to account for the stock which he hypothecated, and all moneys received by it on account thereon. And why shall such demand be refused? Upon the payment of the notes drawn by him the interest of the bank in the collateral ceased, and therefore the indorsers were alone entitled to whatever indemnity it afforded. It remained for their protection to whatever extent it was originally pledged. But their payment of the notes did not make them owners of the stock. Their interest in it remained collateral, and was a subject to be determined just as the bank's was, viz: By payment of the debt for which it was pledged. They had no right to use it for any purpose not authorized by the original hypothecation. Grant it, that the indorsers having lifted the notes had an interest in the collateral which was itself susceptible of being pledged, yet that interest was inseparable from the original debt. It existed only in and through the debt for which those notes were given, and was determinable with it. It being paid by the debtor to

whoever held the notes, there could be no outstanding interest in the collateral in any one except as assigned by its real owner. It was a serious misconception of the law relating to securities to suppose that either the bank or the indorsers, or both together, could, by act of theirs, unauthorized by the owner of the stock, rehypothecate it for a different indebtedness. See the result, were the transaction sustained. G. A. Searight pays to his indorsers the full amount of the notes which they lifted and which stood to their use; the stock which he pledged for the securing of these notes is afterwards applied in payment of notes which the indorser gave to enable them to lift the original notes, and thus G. A. Searight is made to pay the same debt twice over, once to his indorsers and then again to the bank. To state the result is to condemn it as repugnant to every sense of justice and every principle of law.

" It will not do to say that G. A. Searight ought not to have paid the notes to the indorsers. They had lifted the notes, and were the holders by assignment from the bank. I have looked in vain for anything in the testimony which connects G. A. Searight with the lifting of these notes by the indorsers; not that they could take advantage of any such circumstances, for, having been paid the notes, they can have no standing in this present contention, but with a view to determine the right of Joseph A. Stuart and what, if any, equities the bank might have through him. There is absolutely nothing to show that he ever consented to a rehypothecation of his stock, and nothing to show any knowledge on his part of the transaction. It is a fact that the bank received the dividend on his stock in January, 1889, and that this was then known to Geo. A. Searight. It is also true that he made no demand for his money or stock until shortly before the bringing of the present suit. This conduct under other circumstances might be of significance as indicating an acquiescence on his part, but in the absence of any evidence that he had any knowledge of what had been done, and in face of the admitted fact that on the 13th day of May, 1887, he actually paid to the holders of the notes their full value, it can have but little if any weight. Why he allowed the bank to retain his money and securities so long after he had met his engagements, we don't know, or the evi-

dence does not explain it; but to conclude that it was because he knew of the rehypothecation or assented to it, would be the grossest sort of injustice and in utter disregard of the simplest rules of evidence.

"We are unable to see any merit in the defence set up; G. A. Searight, having in good faith paid the notes for which his stock was pledged, and never having consented to any rehypothecation of it, is entitled to the relief prayed for."

A decree was entered accordingly.   Defendant appealed.

*Error assigned* was above decree, quoting it.

*John Hays, J. Webster Henderson* with him, for appellant.— Equity had no jurisdiction: Adams's Ap., 113 Pa. 449; Allison's Ap., 77 Pa. 221; Ahl's Ap., 129 Pa. 49; Passyunk Building Association's Ap., 83 Pa. 441; Grubb's Ap., 90 Pa. 228; Pittsburg & Connellsville R. R. Co.'s Ap., 99 Pa. 177; Roland v. Bank, 135 Pa. 598; Drove Yard Co.'s Ap., 123 Pa. 250; Foll's Ap., 91 Pa. 434.

The indorsers were to be treated as sureties for G. A. Searight: Gunnis, Barrett & Co. v. Weigley, 114 Pa. 191; Pott v. Nathans, 1 W. & S. 155.

A surety is entitled to the benefit of a security intended for his indemnity though not a party to it: Bailey v. Niles, 1 Penny. 371; Gossin v. Brown, 11 Pa. 527; Kuhns v. Bank, 2 Watts, 136; Klopp v. Bank, 46 Pa. 88; Boltz's Est., 133 Pa. 77; McCormick v. Irwin, 35 Pa. 111; Jones on Pledges, §§ 418, 419, 513; O'Hara v. Baum, 88 Pa. 114; Russell v. Miller, 54 Pa. 154.

*E. W. Biddle, M. C. Herman* with him, for appellee.—Equity has jurisdiction: Gloninger v. Hazard, 42 Pa. 389; Passayunk B. Assn.'s Ap., 83 Pa. 441; P. & C. R. R. Co.'s Ap., 99 Pa. 177; Adams's Ap., 113 Pa. 449; Evans v. Goodwin, 132 Pa. 136; Shillito v. Shillito, 160 Pa. 167.

The re-hypothecation of the collateral was unlawful: 18 A. & E. Ency. L. 667, 720; Davis v. Funk, 39 Pa. 243; Sitgreaves v. Bank, 49 Pa. 359; Diller v. Brubaker, 52 Pa. 498; Brubaker's Ap., 65 Pa. 317; Jones on Pledges, §§ 419, 552, 563, 602, 610.

PER CURIAM, July 11, 1894:

All the questions necessarily involved in this appeal have been so fully considered and correctly disposed of by the court below that further discussion of them would serve no useful purpose.  Our examination of the record has satisfied us that there is no error in the decree, or in the rulings leading up thereto.  It may therefore be affirmed on the clear, concise and convincing opinion of the learned president of the 39th judicial district, who specially presided at the hearing.

Decree affirmed and appeal dismissed with costs to be paid by appellant bank.