## J. B. Gwinn and Frank L. Gwinn, Appellants, *v.* E. M. Lee, John A. Magee, D. M. Anderson, J. L. Hunter and S. B. Eisenhuth.

*Partnership—Equity of partners and creditors—Effect of death or transfer.*

The equity of creditors must be worked out through the medium of that of the partners.

In the absence of an agreement a legal dissolution is effected by death of a partner or the transfer of a partnership interest.

*Partnership—Transfer of shares—Liability for pre-existing debts.*

The transfer of a partner's interest or shares in an unincorporated banking association and a continuance of the business without any separation of past from future liabilities, or discrimination between past and future profits will not make the new concern liable for pre-existing indebtedness of the bank. The creditors of the former firm or firms which may have constituted the banking association have no claim attaching to the partnership effects which have passed to the succeeding partnership; the latter firm may sell unhampered by any lien or trust in favor of the creditors of the former firm or assign for the benefit of creditors, and in that case the only persons entitled to participate in the distribution are the creditors of the firm to which the property belonged at the time of the assignment.

*Equity practice—Pleadings—Injection of one defendant as supplemental plaintiff.*

While in a sense both parties in equity are plaintiffs and a decree may in some circumstances be entered in favor of the defendant without a cross bill, yet the necessity for proper and formal pleadings is not destroyed. It is not permitted on mere motion after replication filed in the regular way and after reference of the case that one defendant may on mere motion urge new facts which would qualify the original statement and without affidavit or service of notice to other defendants inject a new plaintiff to urge grounds of relief which the other party plaintiff could not press.

*Equity—Jurisdiction once attaching embraces all points in contest.*

Equity ever looks to great principles rather than the special modes of procedure, which latter must always give way when they come in conflict with the application of these principles to cases embraced within them, and a doubt as to equitable jurisdiction will not prevail after a full hearing and after heavy costs have been incurred.

When equity takes cognizance of a litigation it will dispose of every subject embraced within the circle of contest, whether the question be of remedy or of distinct yet connected topics of dispute. If the jurisdiction attached from the nature of one of the subjects of contest, it may embrace all of them, for equity abhors a multiplicity of suits.

Argued May 6, 1897. Appeal, No. 187, April T., 1897, by plaintiffs from decree of C. P. Clarion Co., Aug. T., 1894, No. 2, dismissing plaintiffs' bill as to certain defendants and refusing certain relief asked for. Before RICE, P. J., WICKHAM, BEAVER, REEDER, ORLADY, SMITH and PORTER, JJ. Affirmed.

Exceptions to referee's report.

It appears from the record that John B. Gwinn filed a bill in equity against Lee and others as copartners praying for the appointment of a receiver for the beneficial association, for an accounting and contribution and general relief. An answer was filed and the case sent to a referee. The referee reported in favor of granting the prayers of the bill to which certain exceptions were filed, as follows:

2. Equity has no jurisdiction to warrant the referee in his report and proposed decree.

3. The referee erred in finding that the transfer of stock made the transferees members of the original company.

5. The referee erred in finding John A. Magee liable for $247.67, E. M. Lee liable for $87.69, J. L. Hunter liable for $119.27, and D. M. Anderson liable for $34.62, and in recommending that they be compelled to pay these amounts.

6. The referee erred in finding that the plant of the Bonanza Oil & Gas Company was liable for and could be confiscated to pay the claim of plaintiff, and in recommending that a receiver be appointed to take charge of and sell the same.

7. The referee erred in finding that Frank Gwinn had the right to intervene and compel the payment of the aforesaid sums, which were sustained by the court below in the following decree:

"And now, April 2, 1897, in accordance with our opinion filed in above stated case, and having heard the parties by their counsel, and on due consideration had, it is hereby ordered and decreed, that the plaintiff's bill be dismissed as to John A. Magee, D. M. Anderson, J. L. Hunter and S. B. Eisenhuth, at the cost of the plaintiff, and that the relief prayed for by the plaintiff and Frank L. Gwinn as to said Anderson, Hunter, Magee and Eisenhuth, defendants, be refused; and that the relief prayed for by the plaintiff and Frank L. Gwinn as to E. M. Lee, defendant, in the 1st and 2d paragraph of plaintiff's

prayer be refused; and the bill is referred back to S. K. Clarke, Esq., Referee, for further proceedings against such of the defendants as were copartners with plaintiff when the debt now held by him was contracted. The question of costs as between the plaintiff and said remaining defendants to be considered and disposed of by the referee and the court at the final hearing."

Other material facts appear in the opinion of the court.

*Errors assigned*, among others, were, in sustaining the fifth, sixth and seventh exceptions. (4) In ordering and decreeing that plaintiffs' bill be dismissed as to John A. Magee, D. M. Anderson, J. L. Hunter and S. B. Eisenhuth, and that the relief prayed for by the plaintiff and Frank L. Gwinn as to said defendants be refused. (5) In ordering and decreeing that the relief prayed for by plaintiff and Frank L. Gwinn as to appointment of receivers and accounting, be refused.

*B. J. Reid*, with him *J. T. Maffett*, *F. R. Hindman*, *J. A. F. Hoy*, and *F. J. Maffett*, for appellants.—The court below regards the cases of Christy v. Sill, 131 Pa. 492, and Powell's Appeal, 2 Pa. Superior Ct. 618, as ruling this case. Our contention here is not in conflict with the rulings in either of the cases referred to, and it is in exact accordance with the principles laid down in Baker's Appeal, 21 Pa. 76, which was approved in later cases.

The equities of partnership creditors depend on the equities of the partners, and as long as a partner continues to have an interest in the partnership, so long do the equities of the firm creditors continue : Richard v. Allen, 117 Pa. 199. See also Menagh v. Whitwell, 52 N. Y. 146.

*Don. C. Corbett*, *W. A. Hindman* and *Harry R. Wilson*, with them *W. H. Hockman* and *Cadmus Z. Gordon*, for appellees.

Where one of several partners pays the debt of the partnership the joint liability is thereby extinguished. It then becomes a question of accounting between the partners. The partner paying the debt is confined to his claim for contribution: Booth v. Farmers and Mechanics Nat. Bank, 74 N. Y. 228.

The cases of Christy v. Sill, 131 Pa. 492, and Powell's Appeal,

2 Pa. Superior Ct. 618, are abundant authority for the ruling of the court below.

OPINION BY ORLADY, J., February 19, 1898:

The facts in this case have been found by a referee, and no exception has been taken to any fact found by him. In 1889 a number of persons organized a company to drill a well for oil and gas, and as a written declaration of their purpose signed an agreement, as follows : " We whose names are hereto subscribed do hereby agree to take and pay for the number of shares set opposite to our respective names, for a formation of a company to operate for oil and gas. Shares to be $20.00 each, and the company to be known as the Bonanza Oil and Gas Company of Curllsville, Pa. When forty shares are taken the company will meet, organize, choose a president, secretary, and treasurer, and procure a charter for the company in accordance with the laws of the commonwealth of Pennsylvania. Shares limited to        ."
The two persons named as plaintiff, with thirty-five others, joined in the agreement and specified the number of shares desired by each. These subscriptions ranged from one to five, and aggregated seventy-five shares, so as to make a capital stock of $1,500, all of which was paid in cash to the treasurer. The organization was not perfected into a corporation as suggested in the subscription to the capital stock.

In March and April, 1889 several meetings of the stockholders were held; certificates of stock were issued to the various members; a constitution was adopted and subsequently amended; officers were regularly elected until December, 1891, after which time no meeting of directors, executive committee nor stockholders was held.

In the constitution it was provided, " all shareholders by transfer are to be considered members of the original company; and each share of stock is to be entitled to one vote. Transfers of stock shall only be made by a vote of two thirds of the stock; " the later provision was afterwards changed, so that any member had a right to make sale or transfers of his stock at will.

Numerous transfers of the stock were made by assignments noted on the books of the company and others by indorsements on the certificates alone. The dates of these transfers are very uncertain, but at the date when the indebtedness mentioned in

the bill was incurred the seventy-five shares of stock were held by thirty-nine persons, and at the conclusion of taking the testimony the seventy-five shares were held by seven persons.

One of the appellees purchased seventy-two shares of stock after the debt was incurred. Three of the appellees were members of the original company and still own stock. Both of the appellants were members of the original company, and one of them, Frank L. Gwinn, retains his stock, and is a defendant in the bill in equity. Three of the original stockholders advanced of their personal funds certain money to develop the business, and for the money so used by and for the association, J. B. Gwinn, the then president, and R. H. Urser, the secretary, on September 20, 1889, gave a judgment note for $1,529.71, to the creditor. The interest on this debt was regularly paid by the association until October 1, 1892. On October 24, 1893, a personal judgment was entered against J. B. Gwinn and R. H. Urser on the note given for the indebtedness of the association. Payment was demanded by the holder of the judgment, and on March 27, 1894, J. B. Gwinn paid the amount of said judgment ($1,708.06) and had the judgment assigned to him. We do not have the testimony adduced before the referee, but in the opinion of the learned judge who made the decree it is stated, "The plaintiff was one of the original members of said company, being the holder of four shares. He sold one share to his son, Frank L. Gwinn, on April 30, 1889, leaving him still the owner of three shares, which he continued to hold a considerable length of time after the judgment note was given to the Newells for the indebtedness of the company, which three shares he finally transferred to E. M. Lee along in 1891 or 1892."

On June 29, 1894, J. B. Gwinn filed a bill in equity against fifty-three persons, in which the organization of the association, some of the transfers of stock and subsequent management of the business was detailed, and prayed:

1. That a receiver be appointed to take charge of the plant and assets of the association and convert the same into money, if found necessary in the liquidation and payment of debts of the association.

2. That an account may be taken and stated of the receipts and expenditures of said association by its successive officers

and managers, and that any balances found in the hands of such officers or managers, be ordered to be applied under the direction of the court to the payment of said debts.

3. That the said defendants may severally be ordered to pay over to your orator, in liquidation of the debt represented by the judgment note, and the judgment thereon mentioned in the third and fifth paragraph of the bill, such sums as in equity may be found due from them to your orator by way of contribution towards any balance of said indebtedness not covered by the proceeds of the property and assets of said association.

4. And that your orator may have such further and other relief as the circumstances of the case may require, etc.

No demurrer was filed, the appellees answered the bill, and after a replication was filed, S. K. Clarke, Esq., was appointed a referee, to take testimony and report the facts, law and form of a decree.

During the progress of the hearing before the referee, when an objection was made to the right of J. B. Gwinn, to ask for the appointment of a receiver, as he had parted with his interest in the association, and was only its creditor as of the date he took an assignment of the Newell judgment, Frank L. Gwinn was brought on the record as a plaintiff to urge the relief asked for in the first prayer, by filing in court a paper called "Joinder of Frank L. Gwinn in plaintiff's application for a receiver," as follows—"And now, February 13, 1895, Heinman & Hoy, attorneys for Frank Gwinn, one of the defendants and a stockholder in the Bonanza Oil and Gas Company, at the time the debt in this case was contracted, and still a stockholder therein, and as attorneys for other defendants joins in the application of the plaintiff for the appointment of a receiver;" which was indorsed by the court, viz, "June 28, 1895, the within motion presented in open court, and upon due consideration thereof, the same is referred to the referee for hearing and to report the facts and the law in the premises, and to make such recommendation to the court as he may believe just and equitable; and if the applicants are entitled to have a receiver appointed," to which order the attorneys for appellees excepted.

The referee made report and suggested a decree, to which exceptions were filed, and after argument in the court below a decree was entered dismissing the plaintiff's bill as to four

of the five appellees at the costs of the plaintiff, and the relief prayed for by the plaintiff and Frank L. Gwinn as to the four named defendants was refused, as well as to the other appellee in the 1st and 2d paragraphs of the prayer, and the bill was referred back to the referee for further proceedings against such of the defendants as were copartners with the plaintiff when the debt now held by him was contracted. To which decree only the plaintiff and Frank L. Gwinn excepted.

Under the undisputed facts John B. Gwinn, at the time of filing the bill in equity, was only a creditor. The fact that he had been a former member of the partnership did not change his status. He withdrew from the association in 1891 or 1892, and on March 27, 1894, he took an assignment of the Newell judgment. He does not aver who the partners were at the time the liability was created, but does say that changes occurred in the membership, by persons who were not original shareholders purchasing the stock at different periods between the organization of said association and the filing of the bill.

Following Christy v. Sill, 131 Pa. 492, and Powell's Appeal, 2 Pa. Superior Ct. 618, we must hold that this association was a mere partnership; that upon a transfer of stock the assignee acquired the rights and became subject to the obligations of a partner as fully as an original member of the firm or holder of the stock, or which is the same thing, acquired such rights and became subject to such obligations; the retirement of one member, or the admission of a new member, works a dissolution of the partnership. If the business is continued the creditors of the former firm have no equity attaching to the partnership effects of that firm which passed to the succeeding partnership. The new firm has absolute dominion over the property, unhampered by any lien or trust in favor of the creditors of the former firm. The fact that the interests of the partners are represented by shares of stock which are transferable like shares in a corporation, and after such transfer the business is conducted as before, without separation or distinction made between past and future liabilities, does not change these rules. The stockholders in such a copartnership have the rights and responsibilities of, and in their relation to the public and each other are general partners. The equities of the creditors must be worked out through the equities of the

partners, and if none of the partners has an equity to have a preference in the distribution, then of course none of the creditors has any.

The provision in the constitution in regard to the effect of transferring stock cannot be credited with any further purpose than the similar but stronger one in Powell's Appeal, supra, and it only secured the purchasers admission into the new firm and prevented a winding up of the business.

Under the facts found by the referee, neither the plaintiff in the bill nor Frank L. Gwinn had any equity which would entitle him to have the assets of the partnership, as it existed at the time the bill was filed, applied to the payment of debts incurred before John A. Magee, D. M. Anderson, J. L. Hunter and S. B. Eisenhuth became members of it.

It cannot be permitted under our system of administering equity that on a mere motion of a defendant, new facts could be urged which would qualify the original statements, and, without affidavit, notice to, or service upon the other defendants, a new party plaintiff could be substituted to urge grounds for relief which the present plaintiff could not press. No action was taken by the referee of this motion, but he treated it as effective for its intended purpose. The case should have proceeded as if this application had not been made: Equity Rules, 50, 51, 52, 53; Cassidy v. Knapp, 167 Pa. 305.

It has been frequently held that when a court of equity takes cognizance of a litigation it will dispose of every subject embraced within the circle of contest, whether the question be of remedy or of distinct yet connected topics of dispute. If the jurisdiction attached from the nature of one of the subjects of contest, it may embrace all of them, for equity abhors a multiplicity of suits: Myers v. Bryson, 158 Pa. 246. The reason is that the parties are properly in court in a case of which the court has jurisdiction of the parties and subject-matter. It will sometimes happen that the precise form of relief prayed for is, upon a view of the facts as presented in the evidence, either impossible or inapplicable; and a court of equity will in that case extend such other form of relief as may be appropriate on a consideration of the case presented. This is done to prevent a failure of justice from defective pleading, and to prevent a multiplicity of actions for the same act or omission: Ahl's Appeal, 129 Pa. 49.

Equity ever looks to great principles rather than special modes of procedure, which latter must always give way when they come in conflict with the application of these principles to cases embraced within them: Hudson v. Barrett, 1 Parsons, 414.

A doubt as to equitable jurisdiction will not prevail after a full hearing and after heavy costs have been incurred: Drake v. Lacoe, 157 Pa. 17; Searight v. Bank, 162 Pa. 504; Evans v. Goodwin, 132 Pa. 136.

The parties are in court. Considerable costs have been incurred, and as in Schuey v. Schaeffer, 130 Pa. 23, a decree such as law and equity would require, and which would be binding upon all parties ought to be made. The assignments of error are overruled. The plaintiff was not entitled to have a receiver appointed for a partnership of which he was not a member nor creditor, nor to an account based on its receipts and expenditures. He may or may not be entitled to the relief asked for in the third and fourth prayers, all of which depends on the facts adduced in the evidence which is not before us.

The decree of the court is affirmed and the record remitted for further proceedings.