Kenin's Estate

Before Van Dusen, P. J., Stearne, Sinkler, Klein, and Ladner, JJ.

*R. M. Remick, Maurice J. Klein* and *Aaron W. White,* for accountant.

*R. M. Remick,* for The Pennsylvania Company for Insurances on Lives and Granting Annuities, exceptant.

*Leslie M. Swope* and *Charles J. Biddle,* of *Drinker, Biddle & Reath,* for Corn Exchange National Bank & Trust Co., exceptant.

STEARNE, J., June 13, 1941.—These are exceptions to an account of a corporate trustee of an insurance trust.

Two principal questions are raised:

(*a*) Whether the trust is testamentary in character, and therefore subject to settlor's creditors, and

(*b*) Whether settlor was insolvent when he erected the insurance trust, and if so, whether such trust was invalid.

The auditor found that the trust was testamentary in character and that settlor was insolvent when the trust was created. He awarded the fund to the executors of the estate of settlor.

Settlor executed a deed of trust on April 12, 1929, whereby he transferred five policies of life insurance upon the life of settlor, aggregating $100,000, to the trustee:

"In trust to collect the proceeds of the said policies upon maturity and pay over the same unto the Trustees named in the last Will and Testament of the Settlor to be thereafter held by them under the same uses and trusts and with like distribution as in said Will set forth with reference to the residuary estate of the Settlor."

On the same day he executed his will wherein he named three trustees, and disposed of his residuary estate as follows:

"Twelfth. All the rest, residue and remainder of my estate, of whatsoever nature and wheresoever situated I give, devise and bequeath unto my trustees hereinafter named In Trust to hold and invest the same and keep the same safely invested and pay over the income therefrom one-third thereof unto my wife, Sarah Kenin, for life, and as to the remaining two-thirds of such income and the whole thereof upon the death of my wife, to assign, transfer and pay over the same to and among my descendants living at each period of distribution, share and share

alike, Per Stirpes upon the principal of representation, until the death of the last survivor of my children, at which time, subject, of course, to the interest of my wife, if still living, I direct that my estate be distributed to and among my descendants then living, share and share alike, Per Stirpes upon the principal of representation.

"In Trust should there be no descendants of mine living at the time of the death of the last survivor of my children, subject, of course, to the interest of my wife, to assign, transfer, pay over and divide my residuary estate to and among such charities or charitable institutions and in such shares and proportions as my trustees or the survivor or survivors of them may determine."

Decedent (settlor and testator) died June 1, 1929 (less than two months thereafter).

The executors of decedent's estate filed their account, which was adjudicated February 19, 1934. The estate was insolvent, and a dividend of approximately 10 percent was paid to creditors.

On January 30, 1935, the trustee of the inter vivos insurance trust filed its account, which, by agreement of the parties, was referred to an auditor, whose report was filed April 24, 1941, the exceptions to which are now before us for determination.

We agree with the learned auditor that this deed of trust is testamentary in character. It, therefore, follows that the fund passes into settlor's estate, and forms part thereof, and is payable to his executors.

In determining whether an instrument is testamentary, intention is important: Fidelity Trust Co., Admr., v. Union National Bank of Pittsburgh et al., 313 Pa. 467, 490. We are therefore required to ascertain exactly what this settlor intended to accomplish by his deed. It would seem to be well established that where there is an immediate and absolute transfer of the res to a trustee for the use or benefit of named or presently ascertainable individuals or purposes, the trust is *not* testamentary in character. Conversely, where there is no immediate transfer,

or if the beneficiaries are not named or presently ascertainable, but such ascertainment depends upon the terms of a will or other testamentary disposition, effective only after death, the trust *is* testamentary in character.

In Windolph v. Girard Trust Co., 245 Pa. 349, and Beirne v. Continental-Equitable Title & Trust Co., 307 Pa. 570, there was an immediate transfer for the benefit of named beneficiaries. Such trusts were held *not* to be testamentary. Reservation by settlor of a life estate, with power to modify or revoke the trust, does not overcome the effect of an absolute transfer, and render the scheme testamentary: Wilson et ux. v. Anderson et al., 186 Pa. 531; Reiff's Estate, 16 Pa. Superior Ct. 80; Reese's Estate, 317 Pa. 473.

Where, however, there is no absolute transfer the trust is testamentary: Tunnell's Estate, 325 Pa. 554. See Beaumont's Estate, 214 Pa. 445, 448, and Chestnut Street National Bank v. Fidelity Insurance Trust & Safe Deposit Co., etc., et al., 186 Pa. 333. See also A. L. I. Restatement of Trusts, §§56, 57, and the Pennsylvania annotations thereto.

In the instant case the trustee's sole duty was to collect the proceeds of the insurance policies and pay same unto "the trustees named in the last will and testament of the settlor . . ." The beneficiaries were not named or ascertained in the trust deed, and could not be ascertained until after the death. Determination of beneficiaries was dependent upon the terms of a will, which is a wholly ambulatory document. Any testamentary disposition in existence at the time of the erection of the inter vivos trust was therefore subject to revocation, alteration, or change, and was effective only after death.

We are, therefore, irresistibly drawn to the conclusion that as the manifest intention of settlor was to distribute the proceeds of these policies, after his death, under the same uses and trusts, and with like distribution as provided by his will, his scheme was in essence testamentary.

It is forcefully argued that reference in the deed to the will incorporated into the deed all the provisions of the will, with the same effect as if the testamentary provisions were actually written in the deed itself; in other words, that settlor erected what is termed a "Referential Trust". A referential trust has been defined as a trust which is created by one instrument which refers to another and incorporates the terms of the latter into the former: 131 L. T. 264 (Eng.) ; Padfield v. Padfield et al., 72 Ill. 322. Of course, this settlor's will *is* incorporated by reference into the deed, but this does not solve the present inquiry. As the will was ambulatory, and the beneficiaries are not ascertainable until after testator's death, no present and immediate interest was assigned, and the scheme still remained testamentary in character, and effective only after death.

An almost similar factual situation as exists in this case arose in Myers' Estate, 309 Pa. 581, and upon the authority thereof the learned auditor largely relied. The question was whether the proceeds of a very similar insurance trust were subject to Pennsylvania transfer inheritance tax under the Acts of June 20, 1919, P. L. 521, and March 28, 1929, P. L. 118. The taxing acts imposed the tax where the transfer was intended to take effect at or after death, and exempted life insurance proceeds where held in trust "for the benefit of" persons or classes of persons under such trust agreement. When the case was before this court (16 D. & C. 533) we held that reference in the deed to the terms of the will incorporated into the deed all the provisions of the will, and hence no tax was due. The Supreme Court reversed. The present chief justice wrote (p. 585) :

"The deed created no interest; it named no beneficiaries. It was incomplete and meaningless. It transferred no property to anyone; it divested the settlor of no beneficial interest whatever. Distribution of the principal was expressly made dependent on the terms of testator's will; nothing could pass to beneficiaries except in that manner. It was not even necessary for him to amend or

revoke the trust or any part of it in order to control its ultimate disposition. He could do that by his will."

For the same reasons as appear in Myers' Estate, this trust is testamentary in character. No present interest was passed, and distribution to designated beneficiaries, and the shares which they were to receive, were made dependent upon the terms of decedent's will, and therefore effective only after death.

The auditor has found as a fact, upon ample evidence, that when settlor executed his deed he was insolvent. Such finding, in the absence of manifest error or clear mistake (and there is none) will not be disturbed. See cases cited in 2 Hunter's Pa. Orphans' Court Commonplace Book, pp. 964, 965.

Because settlor was insolvent, the auditor ruled that, under the Uniform Fraudulent Conveyance Act of May 21, 1921, P. L. 1045, 39 PS §354, the deed was invalid as to creditors. He relied upon Fidelity Trust Co., Admr., v. Union National Bank of Pittsburgh et al., 313 Pa. 467. There would seem to be no necessity to discuss the findings of fact and conclusions of law of the learned auditor. We agree with him that at the time of the creation of the trust the policies were payable to the estate, or at least were thereafter payable to the trustee for the uses designated. We also agree that, while under the terms of the Acts of April 15, 1868, P. L. 103, and June 28, 1923, P. L. 884, an insolvent may nonetheless make his "wife or children or dependent relative" beneficiaries, and thus remove such insurance proceeds from the insured's estate and creditors, the designations contemplated by the act did not in fact occur either in the policies or in the deed. And even the will does not limit beneficiaries to such named class, but extends to settlor's descendants generally, and in certain contingencies the terms of the will include named charities. Manifestly, the will is not a designation of exempt beneficiaries, "wife, children or dependent" as contemplated by the acts. We need add nothing further to what the auditor has so accurately written.

The jurisdiction of the orphans' court has been challenged to declare such a deed invalid. The orphans' court is a court of equity, with limited jurisdiction: Cutter's Estate, 286 Pa. 505; Watson's Estate, 314 Pa. 179; Mains' Estate, 322 Pa. 243. The Act of June 26, 1931, P. L. 1384, amending the Orphans' Court Act of June 7, 1917, P. L. 363, conferred concurrent jurisdiction over trusts inter vivos: Wilson, Mayor, v. Board of Directors of City Trusts et al., 324 Pa. 545, 552 et seq. When, therefore, the trustee filed its account in this court, the orphans' court assumed complete jurisdiction over the subject matter. It is a well-settled principle that a court of equity, when its jurisdiction has been invoked for any equitable purpose, will proceed to determine any other equities existing between the parties connected with the main subject of the suit, and grant all relief necessary to an entire adjustment of such subject. And relief of an equitable character may thus be incidentally obtained, when an original bill would not lie for such relief alone: John Curtis & Co. v. Olds, 250 Pa. 320; Broadhurst v. Broadhurst, 248 Pa. 594; Hurst v. Brennen (No. 1), 239 Pa. 216; Gwinn v. Lee, 6 Pa. Superior Ct. 646; Maurel v. Smith, 220 Fed. 195; 21 C. J. 137; 5 Pepper & Lewis Dig. col. 8378: 2 Hunter's Pa. Orphans' Court Commonplace Book, p. 946. This court has, at least on two occasions, similarly ruled: Judge Gest in Comly's Estate, 16 D. & C. 336, 339; Judge Stearne in Goldstein's Estate, 29 D. & C. 536, 540 et seq.

We, therefore, concur with the ruling of the auditor that the deed was invalid, because of the insolvency of the settlor, and where settlor did not designate his wife, children, or dependents as beneficiaries under the Act of 1923, and for this additional reason the fund was properly awarded to the executors of the settlor's estate.

The exceptions raise a question as to what amount of interest should be fixed. The auditor correctly ruled that the *sole* duty of accountant was to collect the proceeds of the insurance policies and pay same to the trustees of the estate. The accountant, however, collected the proceeds,

invested same, and made certain distributions of income to beneficiaries named in the will. The auditor properly ruled that all investments should be replaced with cash. He directed that interest at six percent be added from August 3, 1929 (the date when the first investment was made), until January 30, 1935 (when the trustee filed its account). We agree with the exceptant creditor that interest should be charged for the improper withholding of this fund. Equitably we feel that the accountant should have a reasonable time within which to prepare its account, file the same, and have it audited. One year, in our opinion, would have afforded ample opportunity for this purpose. We, therefore, direct that interest at the rate of six percent shall be charged upon the amount which the accountant collected, beginning one year from such period until actual payment of the award. There would seem to be no legal justification for the trustee to deviate from the clear terms of the trust, and it must therefore pay interest as damages for detention: 33 C. J. 178; McCornack v. Sharples, 254 Pa. 541; Potter's Estate, 249 Pa. 158; Ihmsen's Appeal, 43 Pa. 431; Kline's Estate, 280 Pa. 41.

Claims were presented to the auditor for allowance to the trustee for commission and counsel fees and by counsel for the exceptant creditor for counsel fee for services in creating this fund for the estate. The auditor decided that all these claims should be presented at the audit of the account of the executors, when all interested parties could be heard. He expressed his opinion that the suggested fees for counsel were fair, but that the trustee should not receive any commissions.

We are of opinion that it would be most irregular to relegate the determination of commissions and counsel fees in this accounting to the audit of the executors' account. It is our view that each question must be decided in the estate wherein it arises.

A review of the record convinces us that the decision of the auditor is correct that there should be no commissions allowed to the trustee. By violating the plain terms of

the trust instrument the trustee has caused all the present litigation, with its attendant expense and delay. Had the trustee performed its duty and paid the proceeds to the executors, they in turn would have accounted for the money, and all questions would have been settled and adjudicated. We agree that no compensation should be allowed to the trustee under the facts of this case. See also Card's Estate (No. 2), 337 Pa. 82, 88.

We feel, however, that counsel for the trustee should receive compensation at this time. This compensation should be solely predicated upon his duties as attorney in a usual and normal accounting. The bulk of the service of the distinguished counsel for accountant was rendered in defending the trustee. We do not regard $5,000 as a proper counsel fee for supervising the collection of approximately a hundred thousand dollars cash, and for preparing an account and attending the audit. One thousand dollars is more than ample compensation for such a service. Doubtless $5,000 is a most modest compensation for the tremendous labor involved in this litigation, but, whatever may be the value of such service, it must be borne by the trustee alone. We accordingly allow $1,000 as compensation to counsel for accountant as a proper charge against this fund.

As to the claim of counsel for exceptant creditor for compensation for creating an additional fund for the estate of decedent, we agree with the auditor that such a claim is a matter to be presented at the audit of the executors' account, and is not presently before us. This claim is rejected, without prejudice, as above indicated.

Exceptions of the Corn Exchange National Bank & Trust Company of Philadelphia, nos. 38, 39, 40, and part of no. 43, are sustained. Because of the large number and complicated exceptions by the various parties, it is impractical to pass upon each exception. The adjudication is modified to the extent indicated in this opinion. Any exception in support of the adjudication thus modified is sustained and all others are dismissed. The adjudication, as modified, is confirmed absolutely.