# Stokes's Appeals.

1. A testator gave to a trustee real estate and bank stocks in trust to pay the income to his daughter half-yearly during life, and "immediately after her decease," he gave the property bequeathed, &c., to a granddaughter and two grandsons; " or such of them as may be living, their heirs and assigns." The trustee having died, his executors settled an account; during the hearing on the account before the auditor, the *cestui que trust* died : *Held*, that the trust then terminated and that all the income from that time passed to those in remainder.

2. The trustee had no active duties to perform to the remaindermen, not even to convey the estate passed directly by the will to the remaindermen; the trustee succeeding the deceased trustee was not entitled after the death of the *cestui que trust* to receive the corpus of the trust.

3. The bank stock bequeathed in trust remained unchanged until the death of the *cestui que trust;* the second trustee collected the dividends—without having possession of the certificates—and the rents of the real estate. *Held*, that he was not entitled to commissions on any of the corpus of the trust.

4. McCausland's Appeal, 2 Wright 466, followed.

January 14th 1876.　　Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Appeals from the Court of Common Pleas of *Philadelphia :* Of January Term 1874, No. 206, No. 207, No. 208, No. 209. In the matter of the trust estate of Harriet Ward, deceased.

No. 206 and No. 207 were appeals from the decree of the court on the account of John F. Lamb, deceased, as trustee of Mrs. Ward.

John Wetherill, late of Philadelphia, died on the 29th of March 1851, having made his will dated August 17th 1837, and proved April 7th 1851.

The following clause of the will gives rise to this controversy :—

" I give, &c., unto the said Samuel W. Budd, his heirs, &c., my storehouse, No. 85, and lot, &c., situate on the east side of Front

30 P. F. SMITH—22

street above Mulberry street. * * * Also, fifteen shares of my stock in the Merchants' and Mechanics' Bank of Wheeling. Also, sixteen shares of my stock in the Philadelphia Bank, and also ten shares of my stock in the Schuylkill Bank. And also the bonds and warrants of John McKinley for $1200, and for $400, * * * to hold to him, the said Samuel W. Budd, his heirs, &c., in trust, to let, &c., the real estate for the best yearly rent that can be reasonably obtained, * * * and to place out and continue at interest the personal estate embraced by this item, and to receive and collect the rents, interest and income thereof, * * * and after deducting thereout all taxes, * * * to pay the surplus thereof, half-yearly, to my daughter, Harriet Kyle, wife of David Kyle, for and during all the term of her natural life, into her own hands, for her sole and separate use, * * * and from and immediately after her decease, I give and devise the said storehouse and lot of ground, and the said personal estate embraced in this devise, unto her three children, namely : Susan Margaret Kyle, Robert Kyle and John Wetherill Kyle, or such of them as may then be living, his, her, or their heirs and assigns ; but if they shall all be then deceased, then I give, devise and bequeath the same unto my residuary devisees and legatees, namely : the said Martha, Susan, Rebecca and Edward, their heirs and assigns, in equal parts."

On the 17th of July 1851, Samuel W. Budd renounced the trust, David Kyle being at that time dead, and Harriet having married Hugh M. Ward.

On the 28th of February 1852, Dr. John F. Lamb was appointed trustee for Mrs. Ward.

J. F. Lamb, the trustee, died in April 1869, never having settled an account of his trust. In May 1870, Edwin L. Stokes was appointed trustee in his place. On the 18th of February 1871, the executors of Lamb filed an account of his management of the trust, which was referred to Charles H. Downing, Esq., as auditor. His first sitting was on the 14th of March 1871. At the hearings there were present with their respective counsel, the accountants, Stokes the trustee, Susan M. Kyle (then Miller) and John W. Kyle, surviving remaindermen of the estate given in trust for Harriet Ward (late Kyle), under the will of John Wetherill. Harriet Ward, the *cestui que trust*, died on the 14th of February 1872, during the progress of the audit, leaving a will, of which she appointed Mr. Stokes the executor, and trustee in it.

The charges in the account as filed amounted to $7368.94, the credits including accountant's compensation, &c., amounted to $6851.62, showing against the trustee a balance of $517.32.

The account contained various items of charge and credit *prior* to February 28th 1852, the date of Dr. Lamb's appointment as trustee. There was also an item of charge, viz. :—

" To cash received city treasurer for damages awarded to
John Wetherill, on house 85 N. Front street,　　　$1550."

On the credit side there was an item of $533, for repairing the
house No. 85 Front street.

Included in the account were charges under date of January
20th, March 2d, April 4th and May 4th 1857, amounting in the
whole to $800, each being for "cash received, Mrs. Ward, for in-
vestment." Also an item of credit:—

"By cash paid, Mrs. Ward, the following sums, being interest
of J. F. Lamb's obligations and cash in hand."

This item contained a number of sums entered in short and
carried out, $593.76.

There was also an item of credit under date of January 10th
1857,

"By cash paid H. Ward on account of $600 note,　　　$50."

There were many other items of debit and credit, which were
in the ordinary course of administering the trust and which the
auditor found to be properly vouched.

The auditor reported:—

"It appears from the evidence that, in the years 1861 and 1862,
John F. Lamb, the trustee, and Mrs. Harriet Ward, the *cestui que
trust*, had a settlement, and from that time until the appointment
of E. L. Stokes, in May 1870, Mrs. Harriet Ward collected the
rents and dividends herself."

Stokes, the present trustee, asked that the account might be
surcharged with $300 and interest since November 1855, amount-
ing to $306 ; also with the sum of $221.55, the amount appearing
to be due Mrs. Ward on a memorandum given her by Dr. Lamb
about the 1st of January 1862, and with interest from that time,
$145.99.

The auditor reported, that the items on both sides of account,
relating to matters occurring before Dr. Lamb's appointment
should be stricken out ; that the item of street damages should be
stricken out as belonging to the corpus of the trust fund and not to
the income ; and that there should also be stricken from the credits
the sum of $533, repairs, &c., to the house, this should be deducted
from the amount of the street damages. With regard to the claim
for surcharge of $300 and interest, the auditor reported that an
account between the trustee and Mrs. Ward, showed that the sum
of $300 had been paid to her on the 30th of November 1855, and
that on the 30th of May 1857, she gave Dr. Lamb a receipt in
full for all "interest, rents and dividends which may have come
into his hands to this date," and that there was nothing to impeach
the receipt.

He reported also that there were receipts covering payments for
the amount, $221.55, mentioned in the memorandum. He therefore
refused to surcharge the account with those two sums and interest.

[Stokes's Appeals.]

He corrected the account as above stated, charging the account-ant with $5108.94 and giving him credit by $5502.86, showing that there had been overpaid to Mrs. Ward the sum of $393.92.

The auditor found that deducting the amount expended for repairs of the house from the street damages there remained $1017 of the corpus to be distributed amongst the remaindermen, the trust having terminated immediately on the death of Mrs. Ward, which as before stated occurred after the auditor had commenced his hearing.

He reported that a clerk in the Philadelphia bank testified that Mrs. Ward had received the dividends on the stock in that bank ; that this was also admitted by the counsel of Stokes at the audit ; that since 1861 or 1862, the dividends and other income had been collected by Mrs. Ward and that no claim had been made since that time ; that receipts had been produced before him for pay-ments by Dr. Lamb to Mrs. Ward since 1862 ; that there was no other testimony before him except that of Susan M. Miller and John W. Kyle to prove that they were the remaindermen of the trust and that Robert Kyle, the other remainderman, had died intestate, unmarried and without issue ; neither was there any evi-dence to prove to the contrary.

The auditor was further of the opinion that " no interest should be charged on said sum of $1017, because it is fully shown by the account that this amount was handed to the *cestui que trust* as income, and it would seem very unjust that interest should be charged him on money of which the *cestui que trust* had the use and possession."

After deducting the expenses of the audit, $640.25, he divided the balance between Susan M. Miller (late Kyle) and John W. Kyle, the surviving devisees in remainder.

The auditor reported that the trust estate which was in the hands of Dr. Lamb consisted of the house, sixteen shares of the stock of the Philadelphia Bank and twelve shares of the Merchant's National Bank of Wheeling ; also, that it appeared from the evi-dence that neither the bonds of John McKinley nor the stock of the Schuylkill Bank ever came into the hands of Dr. Lamb ; the Schuylkill Bank having failed before the death of John Wetherill, the testator.

A number of exceptions were filed to the report, being substan-tially the same as the specifications in the assignments of error hereafter stated.

The court, PAXSON, J., sustained one exception which increased the balance by $175—overruled all the others—and otherwise confirmed the report, and decreed that the balance be equally dis-tributed between Susan M. Miller and John W. Kyle.

Stokes, as trustee, appointed to succeed Lamb, appealed to the Supreme Court and assigned for error,

[Stokes's Appeals.]

1. Not awarding to Stokes the trust estate, whole and entire, as the same was given, &c., by John Wetherill, deceased.

2. Not awarding to him $1017, found to be part of the corpus of the estate.

3. Not ordering the accountant to deliver to Stokes all papers, &c., and muniments of title of the trust estate.

4. Decreeing that the evidence showed that neither the McKinley bonds nor the Schuylkill Bank stock had come into the hands of Dr. Lamb.

5. Awarding to S. M. Miller and John W. Kyle instead of to Stokes, $640.25 as corpus of the estate.

6, 7. Admitting Susan M. Miller and John W. Kyle to prove that they were remaindermen under John Wetherill's will and that Robert Kyle had died intestate, unmarried and without issue.

9. Decreeing that the trust had terminated.

10. Not " omitting" $1550 street damages, being part of the corpus of the estate.

Stokes appealed also as executor and trustee under the will of Mrs. Ward, and assigned for error,

1. Not awarding to appellant interest on the $1017, the balance of street damages.

2, 3, 4. Not awarding him the sums of $300 and $221.55, referred to in the report, and also the sums received from Mrs. Ward for investment, as contained in the account, amounting together to $800.

5. Decreeing that Dr. Lamb had overpaid Mrs. Ward $393.92.

6. Decreeing that Dr. Lamb had a settlement with Mrs. Ward in 1861 or 1862, and she had received the income since; and not surcharging the account with that income.

7. Decreeing that the trust under Wetherill's will had expired.

8. Decreeing that numerous payments had been made by Dr. Lamb to Mrs. Ward after January 1st 1862.

9. Vouching the account from September 24th 1855, to May 4th 1857, with one receipt dated May 30th 1857.

10. Not striking out the item of credit of $50 under date of January 10th 1857.

Appeals No. 208 and No. 209 were from the decree of the court on the account of Edwin L. Stokes, trustee, &c., of Harriet Ward (late Kyle), under the will of John Wetherill, deceased, under the clause heretofore stated.

On the 29th of November 1872, on the petition of Susan M. Miller and John W. Kyle, the surviving remaindermen in the trust, the Court of Common Pleas directed Stokes to file an account of the personal estate and money received by him as trustee of Mrs. Ward. The trustee accordingly filed an account on the 3d of January 1873, which contained charges against the accountant

for rent, and dividends on bank stock from November 1st 1869, until November 1st 1872 ; the premium, $125, received July 1st 1871 on a policy in the Franklin Fire Insurance Company, the policy having been lost.    The credit side of the account contained divers items from May 14th 1870 until December 26th 1872. Amongst others was an item of $301 premium for insurance on a house, part of Mrs. Ward's trust estate ; also, an item of cash paid E. S. Lawrance, Esq., professional services, $200, and an item, "commission to trustee on account $39.65." There appeared to be in the hands of the accountant a balance of $308.62.

After the striking of the balance there appeared this item, "Paid, filing account, $10."

Also, a memorandum of the trustee, that he claimed a right out of the balance, "to pay all the expenses of stating, filing and settling this account;" also, that he had "paid himself from time to time certain sums on account of his commission, but leaves the question open as to what his commission shall be, to be settled by auditor or the court on this or his final account."

The account was referred to Charles H. Downing, Esq., as auditor.

The auditor reported that Stokes, as executor, &c., of Mrs. Ward, claimed that he was entitled to the sums amounting in all to $243.16, being rent and dividends which had become due during Mrs. Ward's life, but collected after her death ; also, the difference $176 between the amount paid for premium on insurance, $301 and $125, the amount of returned premium ; he also claimed that he was entitled to receive 2½ per cent. commissions on the gross value of the real and personal estate, the subject of the trust, viz., real estate devised in trust $12,000, and personal estate, consisting of stock in the Philadelphia Bank and a bank at Wheeling, bequeathed in trust $3528, the commission as claimed on this being $394.20 ; he also claimed commissions at 5 per cent. on $500, being the rent of the real estate from July 1st to December 1st 1872, $25.

The remaindermen objected to the credit of $200 for professional services to Mr. Lawrance before the death of Mrs. Ward, on the ground that they should have been paid out of income received during her life ; to commissions, $36.95, on income collected after January 1st 1872, on the ground that the trust terminated by her death on the 14th of February 1872, and Stokes had no authority from the remaindermen to collect the income ; to commissions on the value of the principal of the trust, because it was a specific bequest, and because Stokes never had any responsibility as to the personal estate, it having continued in the hands of the executors of the former trustee ; that Stokes as executor was entitled only to that part of the income that became due and payable before Mrs. Ward's death.

The auditor found that a dividend, $38.16, on the stock in the

Wheeling bank paid January 1st 1872, and one month's rent, $83.36, paid February 1st 1872, making $121.49, being due before the death of Mrs. Ward should be awarded to Stokes, her executor, but none the remainder of the rent and dividends claimed by him should be awarded to him. As to the claim for the premium on the policy of insurance, he reported that at the time of John Wetherill's death a policy, issued on the house, part of the trust fund, was lost and the insurance company called for an additional premium ; Stokes paid $301 premium for a new policy and cancelled the old one, the premium, $125, for which was paid to him; Stokes claimed $176, the difference between the two premiums, the remaindermen to receive a transfer of the new policy ; this they declined and the auditor reported that Stokes should be surcharged with $125, the old premium, have the last policy cancelled and receive the premium unless the remaindermen would take from him a transfer of the policy and pay him the premium. The auditor also found that the bank stock belonging to the trust as capital had never been in the possession of Stokes and that there had been no reinvestment of the funds of the estate; he therefore did not allow commissions on any of the capital of the trust, the same being in his opinion a specific gift. As to the claim for commissions, $25 on $500 rent ; the auditor reported that, although Stokes had leased the real estate for one year from December 1st 1871, he had no right as trustee to collect rent beyond the time of Mrs. Ward's death the trust having then terminated. The auditor allowed a credit for a fee of $25 to Mr. Lawrance for services before the auditor and $10 paid for filing the account.

The auditor further reported that the services rendered by Mr. Lawrence were for the benefit both of the trust and of Mrs. Ward,. he having attended with fidelity to the interest of both before the audit on Dr. Lamb's trust account. The auditor therefore charged that sum to both, viz., $121.49 to Mrs. Ward and $78.51 to the trust estate, to be deducted from the share of the remaindermen. The auditor also allowed to Stokes of the $36.95, the sum of $6.07 as commission at 5 per cent. on $121.49, the amount collected by him prior to the death of Mrs. Ward.

The auditor reported an account against Stokes corrected according to his foregoing findings. After deducting the expenses of the audit, &c., there appeared according to the account, to be against the accountant a balance of $302.75, which he distributed equally between Susan M. Miller and John W. Kyle.

Exceptions were filed by Stokes to the report; they were overruled, except one which was sustained and the balance increased by $62.50 ; with this correction the report was confirmed.

Stokes as trustee under the will of Wetherill, appealed to the Supreme Court. He assigned for error,

1. Not allowing him commissions on the corpus of the trust.

2. Not allowing him commissions on the rent of the real estate from July 1st 1872 to December 1st 1872.

3. Refusing to allow him $30.88 of his claim $36.95, " commissions to the trustee on account."

4, 5. Confirming the report of the auditor in his findings as to the policy of insurance and surcharging the accountant with $125.

6. Confirming the report of the auditor as to the fee of $200 paid Mr. Lawrance.

7. Not allowing accountant $10 for stating the account.

8, 9. Confirming the finding of the auditor that the stocks of the trust were never in the hands of the accountant, and that the remaindermen had not authorized the accountant to make any collection of the income after Mrs. Ward's death.

10. Not directing the expenses of the audit to be charged proportionately to the corpus of the trust and the income.

Stokes, as executor, &c., of Mrs. Ward, appealed from the decree and assigned for error,

1. Not awarding to the executor his claim for six months' rent, $41.67, due March 1st 1872, three and a half months' dividend, $65 on Philadelphia Bank stock up to May 1st 1872, one and a half months' dividend, $15, on Wheeling Bank stock, July 16th 1872.

2. Not allowing him the whole sum of $301, the amount of the insurance premium.

3–6. Finding that Robert Kyle had died intestate, unmarried and without issue; and that Susan M. Miller and John W. Kyle were the surviving remaindermen, on their own testimony; and in dividing the balance on the account between them.

7. Not decreeing that the expenses of the audit should be proportionately charged to the corpus, and to the income of the trust.

*E. S. Lawrance*, for appellant.

*W. A. Husband*, for Susan M. Miller and J. W. Kyle, appellees.

*J. A. Clay*, for the executors of Lamb, appellees.

Mr. Justice PAXSON delivered the opinion of the court, January 24th 1876.

There were two accounts filed in the court below, in the same estate, out of which four appeals have grown. They have been argued together, and may all be disposed of in one opinion. The first account was that of John S. Lamb, trustee of Harriet Ward, as stated by his executor. The second account is that of Edwin L. Stokes, who succeeded John S. Lamb in the trust. The two accounts form a continuous statement of the estate of the said

Harriet Ward.  The said Stokes is also the executor and trustee under the will of the latter.  Two appeals have been taken by him to the decree of the court below upon each of the accounts referred to.  One of said appeals is as trustee of the estate of Harriet Ward under the will of John Wetherill; the other as executor and trustee under the will of Harriet Ward.  We will first consider the appeals in the case of the account of John S. Lamb, trustee.

There are ten assignments of error in each of these appeals. Those in the appeal of Edwin L. Stokes, as trustee, will be first considered.  The principal cause of complaint is evidently embodied in the first assignment, which alleges error in not awarding to the appellant " the trust estate, whole and entire, as the same was given, devised and bequeathed by John Wetherill, deceased."  By the terms of the will of John Wetherill, the estate passed directly to the remaindermen upon the death of Harriet Ward. · The words of this portion of said will are as follows: " And from and immediately after her (Harriet Ward's) decease, I give and devise the said storehouse and lot of ground and personal estate embraced in this devise, unto her three children, namely, Susan Margaret Kyle, Robert Kyle, and John Wetherill Kyle, or such of them as may then be living, his, her, or their heirs and assigns."  The trustee had no duties to perform to the remaindermen; not even to convey to them. The case is stronger than Bacon's Appeal, 7 P. F. Smith 504, in which Mr. Justice Strong said, the trustees " were not at liberty to hold a single hour for the use of those in remainder."  The moment Harriet Ward died, the remaindermen were in by virtue of the will of John Wetherill.  The duties of the trustees were ended; there remained only the liability to account.  The trust estate as reported by the auditor consisted principally of a storehouse on Front street and certain shares of bank stock.  He further finds that no portion of this property has ever been in the possession of this trustee.  As the trust was ended by the death of Harriet Ward, this claim is wholly devoid of merit.  It is difficult to see its object, unless it be to enable the trustee to charge commissions upon the corpus of the estate.  We would not award it to him for this reason alone.

The second, third, fifth, eighth and tenth assignments of error refer to the same subject as the first and fall with it.. The fourth is to a question of fact, and is not sustained.  The sixth and seventh allege error in admitting the testimony of John W. Kyle and Susan M. Miller, to establish that they were the remaindermen under the will; and also to prove the death of Robert Kyle, intestate, unmarried and without issue.  As there is no contention about either of these facts, and as this trustee has no right to interfere if there were, the force of these assignments is not apparent.

The ninth exception is fully covered by what has already been said.

The assignments of error in the appeal taken by Mr. Stokes, as executor of Harriet Ward, differ somewhat from those just considered. The first alleges error in not decreeing to appellant interest on the sum of $1017, found as corpus of the trust. The learned auditor finds as a fact that this amount was handed to the *cestui que trust* as income, and says very properly that "it seems very unjust that interest should be charged him on money of which the *cestui que trust* had the use and possession." The second assignment refers to what would evidently seem to be a mistake of $300 in an alleged memoranda of settlement with Mrs. Ward in November 1855. The error appears in the figures as printed. But the paper itself was a mere loose memorandum and formed no part of the account filed. The auditor's explanation of it is entirely satisfactory. He finds as a fact that the *cestui que trust* received $300 from her trustee during that month,, and that the accounts between them for two years afterwards were fully covered by receipts of the *cestui que trust*.

The third assignment alleges error in not awarding to appellant the sum of $221.55, with interest, which it was alleged was due from the trustee to Mrs. Ward upon a settlement in 1862. But the auditor finds that this sum was subsequently paid over to Mrs. Ward, and satisfactory receipts produced therefor. The fourth assignment alleges error in not awarding to appellant the sums referred to on the debit side of the account under date of January 20th 1857, March 2d, April 4th, and May 4th 1857, amounting to $800. As we see no sufficient reason why these sums should be awarded to the appellant, and as none has been shown to us, this assignment may be dismissed. The fifth refers to questions of fact which appear to have been correctly decided by the auditor. The seventh alleges that the court below erred in decreeing that the trusts under the will of John Wetherill had expired. We have already passed upon this point. It was not pressed either before the auditor or in this court. The eighth, ninth and tenth assignments relate to questions of fact which do not need discussion.

This brings us to the second account, or the one filed by Mr. Stokes, as trustee of Harriet Ward. Here, also, there are ten assignments of error by " the trustee accountant," and seven by the accountant as " executor of Harriet Ward." I will consider them in the order in which they are stated. The first assignment filed by the trustee accountant alleges error in not allowing said accountant a commission of two and a half per cent. on " the corpus of the trust estate." The commissions claimed were properly disallowed. The auditor finds that the certificates for the bank stocks were never in the possession of this trustee, the same having been held

by the executors of the former trustee until the final settlement of his account.    Neither was there any re-investment of the funds of the estate.    Still less would the trustee be entitled to commissions upon the real estate, which passed directly to the remainder-men without his intervention.    If any authority were needed for so plain a proposition, it may be found in McCauseland's Appeal, 2 Wright 466.    The second and third assignments also refer to commissions.    We fail to perceive any error as to either.    The charge of $25 was for commissions on rents which the trustee did not collect, and the $30.88 was for commissions on income which he had no right to collect.    It was income which accrued after the death of Mrs. Ward, and the remainder-men had given him no authority to receive it.    As to them he was a mere intermeddler, and was not entitled to charge for his services in that capacity.    The surcharge of $125 referred to in the fourth assignment was properly made.    It was an equitable mode of adjusting the matter to which it refers, which did no injustice to the accountant.    The fifth assignment is to a question of fact and is not sustained.    The placing of counsel fees upon both the income and corpus of the estate referred to in the sixth assignment, was entirely proper.    If it were not so, the remainder-men are the only parties who have the right to object, and they have not done so.    The auditor finds that the services of counsel enured to the benefit of those in remainder as well as the life tenant.    There is nothing from which we can find that the proportion adopted by the auditor was not just.    The seventh specification may be dismissed with the remark that the claim for $10 for stating the account, was not made before the auditor, and could not therefore have been passed upon by the court below.    The eighth and ninth assignments are to questions of fact, and are not sustained.    Nor do I see any merit in the tenth assignment.    This trust was not for the remainder-men, and there appears no good reason why they should contribute to the expenses of the audit.

It remains but to consider the seven assignments filed by Mr. Stokes as executor of Harriet Ward.    As to the three items claimed by the appellant in the first of said assignments, it is sufficient to say that the auditor finds that they were for rents and dividends which did not become due until after the death of Harriet Ward.    It is clear that they do not go to her executor.    The residue of these assignments have been fully disposed of by what has already been said.

I have gone over these cases patiently and microscopically. This is sometimes necessary in order to see the points involved.

The appeals in all of these cases, to wit, Nos. 206, 207, 208 and 209 of January Term, 1874, are dismissed, and the decrees of the court below affirmed.    The costs in each appeal to be paid by Edwin L. Stokes, appellant.