## Taylor's Estate.

*Wills—Construction—Gift to wife—Distributive share.*

1. Where a testator directs that his "entire estate be kept together as a whole and undivided for a period of five years" and that his executors should "handle the estate" as if the testator were living, and after giving his wife a half interest in the residue directs that the executors should allow his wife "sufficient funds from the estate during the progress of settlement to live as we have

heretofore lived, and to carry on certain charities and gifts that we have both made to various people and interests, which may still need them," payments made to the wife by the executors during the settlement of the estate for her maintenance and her charities referred to in the will, are chargeable to the testator's estate, and not to the widow's distributive share therein.

*Executors and administrators—Compensation—Agreement with widow as to compensation.*

2. Where a testator gives one-half of his estate to his widow, and the remaining one-half to his two sisters share and share alike, and appoints the husbands of the two sisters as executors, and directs that his entire estate should be undivided for a period of five years, the executors will not be allowed commissions during the five years period, where it appears that the executors drew on their wives' shares from time to time during the five years period, and that they subsequently agreed not to claim compensation for such period, if the widow would withdraw her exceptions asking the executors to be surcharged with interest for the amounts advanced during the five years period, which she did.

3. A personal representative may waive or renounce his right to compensation and such waiver or renunciation need not be expressed, but may be implied from his acts and conduct.

4. Where executors agree, after a decree nisi distributing substantially the whole estate and before the entry of final decree, not to demand commissions, and distribution is made of the whole estate, except certain stocks of small value, such agreement together with the fact that the executors had not claimed commissions in their account, will be construed as disclosing an intention to waive any claim for compensation.

Argued Nov. 6, 1912. Appeals, Nos. 164, 165, 166 and 167, Oct. T., 1912, by Mary Z. Taylor, W. E. Fohl, and A. C. Munhall, Laura T. Fohl and Loulou T. Munhall, from decree of O. C. Allegheny Co., Oct. T., 1911, No. 69, dismissing exceptions to adjudication in Estate of Selwyn M. Taylor, deceased. Before FELL, C. J., MESTREZAT, ELKIN, STEWART and MOSCHZISKER, JJ. Reversed in part.

Exceptions to adjudication.

From the record it appeared that Selwyn M. Taylor died January 25, 1904, leaving a will in which his wife,

Mary Z. Taylor, and his brothers-in-law, A. C. Munhall and W. E. Fohl, were appointed executors. His estate, consisting principally of stock in two coal companies, was appraised at $2,000,000, and his liabilities amounted to about $400,000. It was to be "kept together as a whole and undivided for a period of five years." The proceeds of a $75,000 life insurance, less $10,000 set apart for his widow's maintenance, were first to be applied to the payment of his debts. Munhall and Fohl had for several years been employed by Taylor and were familiar with his business and his methods of conducting it. They were the active executors in settling the estate, Mrs. Taylor's relation to the administration being formal in character.

By his will he bequeathed certain small legacies to his wife, his brothers-in-law, the executors, his nephews and nieces. The appraised value of the legacies to each of his brothers-in-law was $7,800. He then divided the balance of his estate into three parts, the one-half to his wife absolutely and the one-fourth to each of his sisters who were the wives of Munhall and Fohl. He directed that the interest on $10,000 of his wife's share should be paid to her niece for life. The last clause in the will is as follows: "I direct that the executors allow my wife sufficient funds from the estate during the progress of settlement, to live as we have heretofore lived, and to carry on certain charities and gifts that we have both made to various people and interests which may still need them."

In 1909 the executors, Munhall and Fohl, filed their first and partial account, in which they did not claim compensation for their services. During the first five years of the administration about $60,000 were advanced to the two executors alleged to be on account of their wives' shares, and about $61,000 were paid to the widow. Numerous exceptions to the account were filed by the widow. One of these exceptions was to the claim for allowance for sums paid the widow

on her distributive share, she alleging that they were payments to her under the clause of the will above quoted directing the executors to allow her sufficient funds for maintenance and carrying on certain charities. The eleventh and twelfth exceptions ask the court to surcharge the accountants with interest on the several amounts paid to the two executors within five years after the death of the testator on account of legacies on the ground that, by the terms of the will, the legacies were not payable until after the expiration of five years. The exceptant alleged, and the auditing judge substantially found at the audit, that before entering upon their duties, the three executors entered into an agreement by which they all waived compensation for their services and, as a consideration thereof, during the five years immediately following the testator's death, advancements were to be made to Munhall and Fohl, two of the executors, on account of their wives' shares in the estate of the testator. During the hearing of the first audit counsel for the widow agreed to waive exceptions eleven and twelve to the account, claiming interest on the advancements made to the executors during the first five years of the administration, and as a consideration therefor the counsel for the accountants agreed that no claim would be made by them against the estate for compensation for services during that time. Exceptions eleven and twelve were thereupon formally withdrawn in accordance with the stipulation of counsel, the other exceptions were dismissed by the auditing judge without prejudice, and distribution of the balance in the hands of the accountants was suspended in order that the rights of creditors might be protected.

In August, 1911, Fohl and Munhall filed their second and final account, No compensation was claimed for services rendered during the five-year period, but the accountants claimed $3,375.00 each for services rendered after the audit of their first account. Mrs. Taylor filed

numerous exceptions to this account. The fifth exception asked the court to surcharge the executors with interest on the sums paid to them, amounting to over $7,000 during the first five years of the administration of the estate, being substantially the same as two of the exceptions to the former account. The sixth exception alleged that the widow's distributive share under the residuary clause of the will was erroneously charged with the amount paid her during the five-year period, on the ground that said amount was not a payment on account of her legacy under the residuary clause but was a payment made by the executors under the last paragraph of the will, directing that funds should be paid her from the estate for maintenance and to carry on certain charities. This is substantially the same as one of the exceptions to the first account. At the audit of the second account, the accountants claimed commissions for services rendered not only since the expiration of the five-year period but also during that period. The learned auditing judge denied compensation for the five-year period on the ground that shortly after the grant of letters of administration the accountants had agreed that they would make no charge; and that during the audit of the first account that the accountants and their wives had stipulated upon agreement of counsel for exceptant withdrawing exceptions eleven and twelve (relating to this subject) accountants would make no claim for compensation for services rendered in the past. The auditing judge further held that the sums paid Mrs. Taylor during the five-year period were properly chargeable to her distributive share and not out of the estate of the decedent under the last paragraph of his will. A decree of distribution nisi was entered January 22, 1912. This decree provided for a complete distribution of the entire assets of the decedent's estate, which was subsequently made, certain stocks however being deposited to secure Mrs. Taylor for such amount as should be awarded to her on the termination of the case. On Feb-

ruary 12, 1912, Mrs. Taylor filed numerous exceptions to this decree, one of which was that the auditing judge erred in charging the amount paid to her during the five-year period to her distributive share instead of to the decedent's estate. No exceptions to the decree were filed by the accountants within the time required by the rules of court. Shortly after Mrs. Taylor filed her exceptions, an agreement in writing was entered into between her, her two co-executors, and the latter's wives. The agreement recites that a decree of distribution had been entered to which exceptions had been filed by Mrs. Taylor; that she had asked the other executors to agree that distribution be made of the assets of the estate in accordance with the decree, she reserving the right to press her exceptions filed as to her right to receive the moneys paid to her by the executors during the five-year period as an additional legacy or allowance under the last paragraph of the will, and also the exception raising the question of her right to receive compensation for her services as executor subsequent to the five-year period; that the executors had agreed that distribution be made of the assets of the estate in accordance with the decree theretofore filed, provided that Mrs. Taylor withdraw all exceptions which she has filed to the decree other than the one bearing on the two items heretofore recited, which she agreed to do. The agreement then stipulated that in consideration of the other executors agreeing that she should receive the assets distributed to her by the decree, Mrs. Taylor should withdraw all exceptions filed to the adjudication except those which bear upon her right to receive the amount paid to her during the five years as an allowance for maintenance and charities, under the last paragraph of the will, and also the exception bearing upon her right to compensation as an executor. It was further provided in the agreement that the wives of the two executors, the other beneficiaries under the will, would deposit certain shares of stock with a trust company to be held by it until the final settlement

of the two questions which remain for determination in said estate.

Subsequent to the execution of the agreement, just referred to, the court in banc heard argument on the exceptions filed by Mrs. Taylor. On May 13, 1912, the court of its own motion ordered a reargument which was heard on the following day. On the day of the reargument, the court permitted the accountants to file exceptions to the adjudication, two of which alleged that the court erred in rejecting the testimony as to the extent of the services performed by the accountants during the original five years' administration, and in refusing to award the accountants reasonable compensation for their services during that period. The majority of the court held, reversing the adjudication, that the amount paid the widow during the five-year period was payable out of and chargeable to the estate of the decedent, under the last paragraph of his will, and should not be deducted from her distributive share, and found that a reasonable allowance was $40,000. The majority of the court also held that the accountants were entitled to compensation for the five-year period, and fixed the amount at $15,000 each. The auditing judge dissented from the finding that the amount paid to Mrs. Taylor was chargeable to the estate of the decedent and not to her distributive share, and one of the other judges held that the executors were estopped from claiming compensation for the five-year period by the agreement of February, 1912. The widow, the accountants and their wives have taken separate appeals from the final decree.

*Error assigned* was the decree of the court.

*George H. Calvert,* of *Blakeley & Calvert,* for W. E. Fohl and A. C. Munhall.

*Donald Thompson,* with him *George B. Berger,* for Laura R. Fohl and Loulou T. Munhall.

*George E. Reynolds,* with him *Louis Caplan,* for Mary Z. Taylor.

OPINION BY MR. JUSTICE MESTREZAT, January 6, 1913:

The important and controlling questions raised on these appeals and the only questions requiring consideration are, (a) what, if any, allowance for maintenance and charities should be allowed Mrs. Taylor under the terms of the will, and (b) what, if any, compensation should be allowed accountants for services during the five years immediately succeeding the testator's death.

We agree with the conclusion of the majority of the Orphans' Court that the funds advanced to Mrs. Taylor during the five-year period were properly chargeable to the estate of the decedent under the last paragraph of his will. It provides as follows: "I direct that the executors allow my wife sufficient funds from the estate during the progress of settlement, to live as we have heretofore lived, and to carry on certain charities and gifts that we have both made to various people and interests which may still need them." The contention that it was the intention of the testator that the moneys for these purposes should be paid out of Mrs. Taylor's distributive share of the estate and not out of the entire estate of the decedent cannot be sustained. The words "the estate" manifestly refer to the testator's estate and not to the legatee's distributive share thereof. Throughout the will he carefully distinguishes between his estate and an interest or share of a legatee therein. He directs that my "entire estate" shall be appraised, that the "entire estate" be kept together as a whole, that his insurance in the Equitable Life shall be made part of "my general estate" and that his insurance in the Royal Arcanum, which goes to his wife, shall not be considered as part of "the interest" she is to receive. He directs his executors to handle "the estate," refers to the money received by "the estate" from his insur-

ance, bequeaths the entire balance of "my estate," directs that "my wife's interest" shall be hers absolutely, and speaks of the division of "my estate." He concludes the instrument by directing the allowance to his wife of the funds "from the estate." It is clear, we think, that he recognized the difference between "the estate" which he was distributing by his will, and "the interest" of his wife, as a legatee.

He directs that "the entire estate be kept together as a whole, and undivided for a period of five years,...... the executors to handle the estate as I would if I were living." In other words, the executors are to take the place of the testator, keep the estate intact and manage it for five years. Distribution is postponed until the end of that period, and in the meantime the legatees get nothing. During her husband's life, Mrs. Taylor's only means of support came through him, and since his death, her maintenance must come from his estate. But during the five-year period no funds from that source were available for that purpose, if the provision for her support, made in the last paragraph of the will, is to be construed as directing payment to be made to her on account of her distributive share. In that event, she is deprived of all means of support during the five years succeeding her husband's death. Was that the testator's intention? Is there anything in the paragraph in question or in any other part of the will that sustains a contention so palpably at variance with reason? The testator gives his wife the one-half of a residuary estate exceeding a half million dollars, but under the appellants' interpretation of the maintenance clause, she would not receive a penny until five years after her husband's death. In view of the manifest purpose of the testator to make ample provision for his wife, we cannot believe that he intended to preface it with a pauper's life for five years.

We think the paragraph itself discloses an intention to provide the funds for its purposes out of the tes-

tator's estate. The payment to his wife is to be made "from the estate during the progress of settlement." The settlement of what? Manifestly, of "the estate" which he was disposing of and not of a distributive share thereof. Under the will, no "settlement" of Mrs. Taylor's legacy could be "in progress" during the five-year period; on the other hand, the testator had specifically directed that his entire estate should be kept together and undivided for five years, during which time it would be in "progress of settlement......with a view to eventually closing it all out." It goes without saying that the estate could not be "undivided," if Mrs. Taylor were to receive a part of her share for maintenance during the five-year period. Had the pronoun "its" been inserted before "settlement," all doubt as to the proper interpretation of the paragraph would be removed, and "the estate" from which the wife was to receive her maintenance would be the estate which was in progress of settlement, which, clearly, could only mean the testator's estate. Again: the funds were to be furnished the wife to enable her "to live as we have heretofore lived, and to carry on certain charities and gifts that we have both made to various people and interests which may still need them." Having declared that she should have the one-half of the "entire balance" of his estate, thus disclosing that she was the first and principal object of his bounty, is there any reasonable ground to support the contention that the funds for the designated purposes should be provided out of the wife's distributive share, making it, and not the testator's estate, bear the burden of sustaining the charities which "we both have made," and of carrying out his desire that during the five-year period the wife should "live as we have heretofore lived"? During that period, the executors paid her $61,000, and the court properly finds that $40,000 would have been a reasonable sum for the purpose, and directs its payment out of the decedent's estate under the last paragraph of the will. Why place

the burden of continuing the maintenance of the charities which the testator had supported in life on his widow to the exclusion of his two sisters, the other two residuary legatees, thereby giving them, in the disposition of the estate, a preference over his wife for whose welfare throughout the entire testamentary instrument he evinces the greatest concern? It was manifestly the testator's intention, apparent from this paragraph of the will, that, during the five-year period in which he directed his estate to be kept together and undivided, the executors should supply the funds from the undivided estate for the maintenance of his widow and his charities.

The fact that the residuary clause precedes the paragraph providing for the maintenance of the widow does not, under the terms of the will, affect or control the construction of the paragraph. The language of the residuary clause clearly discloses that it was a disposition of the balance of the estate after payment of the other bequests and sums directed to be paid by the will. The clause in question disposes of "the entire balance of my estate," and there is no language in any other part of the instrument that shows a different purpose. It is difficult to see what language could have been employed by the testator to express more clearly an intention to dispose of the residue of his estate after meeting all the obligations and liabilities imposed by the will. The "entire balance of my estate" is equivalent to the "residue" of the estate, and, as said in Graves v. Howard, 56 N. C. 302, "the residue of a testator's estate means what is left after all liabilities are discharged and all the purposes of the testator are carried into effect." The last paragraph of Mr. Taylor's will must be "carried into effect" before there can be a distribution of the "entire balance" of the estate.

We do not agree with the majority of the court below that the executors are entitled to compensation for services rendered during the five years following the

testator's death.   We think Judge OVER reached the right conclusion in holding that they were estopped from claiming compensation by the agreement of February, 1912.   In the opinion of the court in banc in which he speaks for himself on this question, Judge OVER says: "It seems to me that the executors are estopped by this (last) agreement, even if not estopped by the other matters referred to in the opinion of the auditing judge, from now claiming commissions during the five-year period, and that the executors' wives are also estopped from claiming that the payments for which they receipted were not on account of their distributive shares." The auditing judge also denied compensation to the executors during the five years because of the agreement between them and Mrs. Taylor, made shortly after letters had been granted, that they should draw on their wives' shares from time to time which was done, and the subsequent stipulation during the first audit by counsel of the executors and their wives that the accountants would not claim compensation if the widow would withdraw her exceptions asking the accountants to be surcharged with interest for the amounts advanced them during the five-year period, which she did.   No claim for commissions was made in the second and final account, and the decree entered by the auditing judge did not allow compensation. After argument on the exceptions filed by Mrs. Taylor to the decree, the court granted a reargument on its own motion, and permitted exceptions to be filed nunc pro tunc by the accountants alleging error in not allowing compensation.   Two of the judges sustained the accountants' exceptions and allowed the claim for compensation, disagreeing, however, as to the amount, which was fixed by the other judge and one of the two judges who sustained the exception.

The reasons for reversing the auditing judge and allowing compensation are given in the opinion of that judge, dissenting from the conclusion of the other two

judges in holding that the money paid Mrs. Taylor during the five year period was chargeable, under the last paragraph of the will, to the general estate of the decedent. The reasons assigned by the learned judge are sufficient to sustain the contention that the executors rendered valuable services to the estate during the five-year period, and that they should be compensated if, by their own act, they have not deprived themselves of their right to claim compensation.

In the first place, the wives of the executors may be eliminated from consideration in disposing of the right of their husbands, the accountants, to commissions. They executed and delivered to the executors, including their husbands, the agreement of November 30, 1908, by which they ratified the payments made to their husbands during the five-year period, declared that they were made on account of the wives' shares in the estate, and that they were "to be of the same force and effect and chargeable against my said interest in said estate as though said payments had been made to me personally." The acceptance of these agreements by the two executors was in effect a declaration by them that the funds advanced were payments on the wives' legacies and not as commissions for services rendered by the accountants. The executors and their wives are now estopped from claiming that these payments (aggregating about $60,000) were made as compensation for the accountants' services. Such claim is simply an after-thought to meet the reiterated agreements made by the executors to waive their right to commissions.

It appears that shortly after letters were granted, the two executors agreed, as suggested by the auditing judge possibly in consideration of the fact that their wives were given half the residuary estate, that they would not ask compensation for their services. They claimed no commissions in their first account. During the audit of that account in 1909, they made a like stipulation as to past services in consideration of Mrs. Taylor with-

drawing her exceptions to their account asking the
court to surcharge them among other moneys with in-
terest on the advances made to their wives during the
five-year period. These facts show in each instance a
sufficient reason as well as a consideration for the
accountants not demanding commissions for their serv-
ices. But, as Judge OVER says, whether the executors
are estopped by these matters, it is clear that the con-
tract of February, 1912, is now a bar to their right to
claim commissions. It is in writing, and was executed
by Mrs. Taylor, her two co-executors and their wives—
all the parties interested in the estate. The two exec-
utors had filed their second and final account, and, as
in their first account, they made no claim to compensa-
tion during the five-year period, but did claim $3,375.00
each for services rendered subsequent to that period.
The audit of this account had taken place and a decree
was entered January 22, 1912, distributing the entire
assets of the decedent's estate. No compensation was
claimed by the executors and none was allowed in the
decree. By excepting to the second account Mrs. Taylor
had again sought to surcharge the accountants with
various sums, including interest on the sums paid to
the executors during the five-year period, and objected
to having her legacy charged with the moneys advanced
to her during that period. Numerous exceptions were
filed by her to the decree nisi. It was subsequent to these
events and prior to the final decree that the parties
made the agreement of February, 1912. It is a renun-
ciation or waiver of their right to commissions for a
consideration expressed. The agreement recites that
Mrs. Taylor had requested that distribution be made
"of the assets of the estate in accordance with said de-
cree," that the executors had agreed to the distribution
of the estate provided Mrs. Taylor would withdraw all
exceptions other than the two bearing on her right to
receive, under the last paragraph of the will, the moneys
paid to her by the executors during the five-year period,

and her right to receive compensation for her services as executor subsequent to the five-year period. It was, therefore, agreed that in consideration of Mrs. Taylor receiving the assets of the estate awarded her under the decree, she should withdraw all the exceptions filed to the adjudication except the two above referred to. Certain stocks were deposited with a trustee to secure Mrs. Taylor for any sum which might be awarded to her upon a final determination of the case. The exceptions were withdrawn and the funds were distributed without any deductions for commissions.

A personal representative may waive or renounce his right to compensation, and such waiver or renunciation need not be express but may be implied from his acts and conduct: 18 Cyc. 1161. As was correctly said in Wiener's Estate, 4 Pa. D. R. 422, what amounts to a waiver of commissions must be determined, like all other questions of waiver, by the acts or omissions of the party entitled otherwise to claim them. In the case at hand, as already observed, the right to compensation was distinctly waived on three different occasions. The agreement of 1912 was made after the decree nisi distributing substantially the whole estate and before the entry of the final decree. It is signed by the widow, the two sisters of the decedent and their husbands, and is a family settlement providing for the complete distribution of the residuary estate in accordance with the decree. It is clearly a waiver of any claim for compensation, as it provides for the complete distribution of the whole estate which was made, except certain stocks of comparatively small value held to await the adjudication of the widow's two exceptions which were not withdrawn. If the agreement is enforced, and it is not alleged there is any ground for its abrogation, it is apparent there is nothing left in the estate to pay the commissions. Prior to its execution, all parties were fully advised of its contents, and there is no evidence which would warrant the conclusion that it was signed

through fraud, accident or mistake. The executors admit they knew what the decree of the court contained before they executed the agreement. Mrs. Taylor knew that she was yielding her right to insist on the surcharges contained in her exceptions, and the executors likewise knew that they had not claimed commissions in their account, and the court had not awarded them compensation, and that they necessarily waived their right to any compensation by agreeing that the entire fund should be paid to the legatees without any provision for payment of their commissions from the estate. One of the executors testified that he knew that if the terms of the agreement were carried out it would remove all assets from the estate, and that there would be nothing from which the accountants could secure compensation. In addition, Mr. Fohl, one of the executors, testified that at the time they were negotiating the agreement and before Mrs. Taylor signed it, he agreed not to file exceptions to the decree covering compensation for the five years. The several acts and omissions of the accountants terminating in the agreement of 1912 clearly disclose the intention to waive any claim for compensation. In Frishmuth's Estate, 2 Pa. D. R. 814, the executors transferred the bulk of the estate, consisting of cash and securities, to a trustee without a claim for or deductions of commissions. "If any compensation, as executors, was contemplated by the parties," says Judge HANNA in declining to allow commissions, "then was the proper time to make claim for its allowance." Here the executors, by the agreement of 1912, transferred substantially the entire residuary estate to the legatees without claiming or deducting their commissions for services rendered during the five-year period. No act could be more decisive of an intention to waive or renounce their right to claim compensation, and they are, therefore, now estopped from demanding commissions.

Counsel for the accountants concede the legality of a

waiver of compensation by a personal representative, but contend that there was no express or implied agreement in this case to waive compensation. They admit there was no intention on the part of the accounts to claim compensation for services during the five-year period until after Mrs. Taylor claimed that the advancements made to her during that period were not to be charged against her distributive share. They contend that if there was a waiver of compensation it was based upon the agreement as to advancements, and Mrs. Taylor having repudiated that agreement she cannot insist upon the accountants standing by an agreement to waive the compensation. The principal reason, the executors say, why they now claim compensation is that injustice will be done their wives by imposing on them the expense of administration, if Mrs. Taylor is successful in having the advances to her allowed under the last paragraph of the will. It is alleged that the only motive which prompted the execution of the agreement on the part of the executors was that the widow might receive a portion of the assets of the estate and not that the executors would not present their claim for compensation.

We fail to see that any or all of these reasons justify the court in setting aside the agreement of 1912, and in relieving the accountants from the consequences of waiving their right to claim commissions. By that agreement, Mrs. Taylor specifically reserved the right to press her exception alleging error in the auditing judge holding that the money advanced her was a payment under the last paragraph of the will. What right, therefore, have the executors to complain if the court subsequently sustained this exception and directed the money to be accounted for under that paragraph? They had notice before they executed the agreement that she intended to assert this claim, and, therefore, they are not in a position to invoke the aid of the court in annulling the agreement because she was successful.

While it is immaterial what motive prompted the accountants and their wives to sign the agreement, it will not relieve them from the consequences of their act even if it was done, as alleged, simply to enable the widow to receive a portion of the assets of the estate. But the agreement does not show that such was its purpose. It made practically a complete distribution of "the estate in accordance with the said decree," thereby leaving no assets against which a claim for commissions could be asserted. That was the effect of the agreement, and we must assume that the accountants knew it. Their own counsel drew the agreement and of course was familiar with its terms.

We find nothing to sustain the allegation that any of the agreements of waiver were executed by the accountants because they were misled by counsel or that they did not fully understand their purpose and effect. The first agreement was made shortly after Mr. Taylor's death in January, 1904, the second in 1909, and the third in 1912, all in effect the same, and it would indeed be singular that the executors and their counsel were, during all these years, ignorant of or misunderstood their provisions. In fact, their counsel, in the printed brief, protest against the assertion of such ignorance, and deny "that they in any way misunderstood the terms of this (last) agreement."

The suggestion that the action of the accountants in signing the agreement was in conflict with the rights of their wives, residuary legatees, and of creditors is not sufficient ground, if true, to release them from the consequences of their act. We do not see how the wives, as residuary legatees, could be injured by the accountants agreeing to waive their compensation, which, if paid, would necessarily diminish the amount of the legacies; nor is it apparent how such waiver could be detrimental to the creditors if the estate had been indebted, there being a large excess after the payment of all the indebtedness. It is wholly immaterial, so

far as it affects the right of the accountants to compensation, whether the wives of the executors were misled in respect to making the agreement to waive compensation, and it is equally of no consequence whether they afterwards expressed dissatisfaction with it and claimed they never consented to it. They signed the instrument, and the law presumes in the absence of fraud which is not even alleged, that they knew its contents. The money was paid to the executors for their wives, the latter declared in writing that it was a payment to them on their distributive share in the estate, and they are now estopped from alleging the contrary.

The parties to the agreement of 1912 are bound by it, and it clearly estops the accountants from claiming commissions for services during the five-year period.

The third assignment filed by Mrs. Taylor at 164 October Term is sustained and decree reversed pro tanto, and the award of compensation to the accountants for services during the five-year period is set aside and the amount thereof is directed to be distributed among the legatees. The other appeals are dismissed.