Card's Estate (No. 2).

Argued September 28, 1939. Before KEPHART, C. J., SCHAFFER, MAXEY, LINN, STERN and BARNES, JJ.

*John O. Wicks,* with him *C. L. Wallace, Robert R. Wertz, Weller, Wicks & Wallace, A. P. Weitzel, Donald L. McCaskey, William K. Unverzagt* and *Smith, Buchanan & Ingersoll,* for appellants.

*Lawrence P. Monahan,* for appellee.

OPINION BY MR. JUSTICE BARNES, November 27, 1939:

William W. Card died on April 14, 1903, leaving a will in which he named The Safe Deposit and Trust Company of Pittsburgh, now the Peoples-Pittsburgh Trust Company, as sole executor and trustee. In *Card's Estate (No. 1),* 337 Pa. 69, there is involved the construction of the dispositive provisions of the will. In these three appeals there is in controversy the amount of compensation claimed by the trustee, and awarded to it by the court below. Exceptions were filed by the appellants and other beneficiaries of the trust estate, to the adjudication of the auditing judge confirming the account of the trustee, and ordering that distribution be made. From the final decree dismissing exceptions the appeals to this Court have been taken.

The executor's first and final account was filed in 1904, and thereafter by decree of distribution entered in May 1904 the residuary estate of the testator (having an appraised value of $1,163,487.68) was awarded to the trustee for the purposes set forth in the will. The present account of the trustee, filed December 2, 1938, is the first one rendered since the inception of the trust,—a period over thirty-four years. During the entire time, the trustee rendered quarterly statements of account to the income beneficiaries named in the will, retaining as compensation for its services, a commission of two per cent upon the income of the trust estate,

without any indication whatsoever that such compensation was a partial one, or that a claim for additional commission on income would be made.

Upon the audit of the present account the trustee claimed an added one per cent of all income which it had received and distributed since assuming the trust in 1904. Its vice-president and trust officer, Mr. Price, testified that there was no thought of charging more than the two per cent commission until the present account was in process of preparation, when it was determined that this compensation was inadequate for the duties performed, and the responsibility assumed under the trust. It was then decided to present a claim for the additional amount.

Moreover the trust officer stated that the present effort to obtain such additional compensation would not have been made, except for the fact that the trustee had withheld from income beneficiaries certain shares of the Westinghouse Air Brake Company, received as stock dividends, which are now on hand, and furnish an available fund for the extra remuneration claimed. He testified: "Q. Oh, well, now, if you did not have these stock dividends which you ask to distribute now, would you ask for one per cent and ask that these beneficiaries be surcharged? A. No, sir, we would not. . . . Q. Did you tell any of these beneficiaries any time prior to the time of filing this account that you were going to charge one per cent additional [on] income? A. No, sir."

Notwithstanding that over the period of the trust five of the original income beneficiaries have died and others, according to the terms of the will, have been substituted in their places, the claim for the additional one per cent is upon the sum of $2,606,860.60, which represents the total income collected since 1904. Thus, the shares of income now distributable to the present beneficiaries are charged with an extra one per cent upon all payments made to deceased beneficiaries.

It is asserted, however, that the testator expressly agreed to the payment of the larger commission. To establish the alleged agreement the trustee placed in evidence a copy of a letter dated June 9, 1902, written by its secretary and treasurer to the testator, the material part of which reads as follows: "From the information you gave me this morning, I am of the opinion that 1% for services as Executor would be reasonable, and as to the Trustee, that so long as the securities were not changed a charge of 2% on the income of the Trusts would be reasonable. Should it become necessary to convert the securities, then I think the compensation of the Trustee should be increased to 3% of the income, *under the conditions you have named.*" There was also a notation upon the trustee's books relative to the estate, which was likewise offered and received in evidence. It sets forth the substance of the letter in these words: "Agreement dated June 9, 1902, fixes the compensation of the Executor at 1% and of the Trustee at 2% on the income of the trust estate as long as the securities are not changed. If necessary to convert the securities then compensation to be 3%."

It appears from the record that from time to time many of the original investments received from the testator have been sold and reinvestments made by the trustee. At the time of the filing of the account in 1938 only three securities, valued at $57,644.02, remained unconverted.

It seems to us that the evidence upon which the trustee relies fails to establish a contract. The provisions of the purported agreement are so indefinite as to render it void for uncertainty. See *Purves's Estate,* 196 Pa. 438; *Edgcomb v. Clough,* 275 Pa. 90, 102-104. The conditions named by the testator, to which the letter refers, have not been set forth, and they are essential to an understanding of the terms of the undertaking. Even if it could be said that an enforceable contract existed, the provision relating to the conversion of securities is

ambiguous. Was the commission to be increased to three per cent on the entire income of the trust if any conversion of securities was effected, or was the higher percentage to be paid solely upon the income from reinvestments? Under the decision in *Baker's Trust Estate*, 333 Pa. 273, we held that the interpretation of such ambiguities by the parties themselves, evidenced by their conduct over a long period of time, must be controlling. Here the construction placed upon the alleged agreement by the parties clearly shows that the trustee was not to receive the increased compensation upon the existing facts.

On behalf of the beneficiaries, who are here the appellants, it is asserted that, whatever right the trustee may have had to collect a three per cent commission, it has been effectively waived by its failure to claim the added one per cent over a period of thirty-four years, and that the quarterly statements specifically setting forth the amount of compensation constituted an agreement on the trustee's part to claim that amount and no more.

We have concluded that the trustee surrendered the right, if any existed, to additional commissions on income already distributed. A fiduciary may expressly, or by implication, waive compensation in whole or in part: *Mulligan's Estate*, 157 Pa. 98; *Taylor's Estate*, 239 Pa. 153, 167; *Scull's Estate*, 249 Pa. 57; *Fitzgerald's Estate (No. 2)*, 252 Pa. 575. The quarterly statements, by failing to indicate that the two per cent deductions were merely on account, evidenced the trustee's intention to accept them in full payment. It is also significant that over the entire period of approximately a third of a century, it made no effort to collect the additional compensation, in the face of the fact that nearly all of the original securities were sold and new investments made in the course of the administration of the estate. These considerations make *Wister's Appeal*, 86 Pa. 160, and *McKinney's Estate*, 16 Phila. 295, readily

distinguishable. In those cases, the trustees received no compensation whatsoever until they filed their accounts, and, of course, it was not presumed that they intended to perform their duties gratuitously.

Included in the securities received by the trustee as a part of the corpus of the estate, was a block of three thousand shares of Westinghouse Air Brake Company. In 1908, 1912, 1913, 1917 and 1923 stock dividends were declared by the company and delivered to the trustee. Two such dividends were treated as income and distributed at the time to the beneficiaries; and an apportionment was made of one dividend between principal and income. The trustee, however, retained the 1917 and 1923 stock dividends in their entirety as a part of the corpus of the estate until the date of the present accounting.

The cash dividends subsequently received upon these shares were paid over by the trustee to the beneficiaries, and the usual two per cent commission was charged thereon. The trustee now concedes that the 1917 and 1923 stock dividends were income when received, and that they should have been distributed to the beneficiaries at the time. The shares were carried in the principal account of the estate as of no value until the preparation of the present account, when they were transferred to income and a value placed thereon of $105,749.00, which included liquidating dividends received during the period from 1936 to 1938.

The trustee claimed, and the court below allowed, a three per cent commission on the value of these stock dividends, to which objection is made that because of the long delay in distributing them, no commission should be charged thereon. The trustee admits that their retention was improper, but insists that it acted in good faith, and without gross negligence; that no objection was made by the beneficiaries, and no material loss suffered by them.

It invokes on its behalf the rule that where a trustee is guilty of wrongful conduct, neither grossly negligent

nor wilful, and where no substantial loss to the trust has resulted, it rests within the discretion of the auditing judge to grant or refuse compensation. See Restatement, Trusts, Section 243. We have concluded that when the case is remanded to the court below this question should again receive most serious attention. It should be borne in mind that the trustee, although it apportioned and distributed previous stock dividends, made no effort to distribute the ones here in question, nor to obtain from a competent court an adjudication of their status. It is asserted that the law upon the subject was then in a state of uncertainty, and such circumstance may be taken into consideration in explanation of its failure to make any effort to apply the law to the particular case. While discretion is a desirable quality in a trustee, here its conduct may have exceeded discretion, and be regarded as a failure to discharge its duty. If the court below shall allow any commission on these dividends, it should be guided by these circumstances, and in any event the commission should not exceed the rate charged by the trustee upon other income of the estate over a period of thirty-four years. If, upon reconsideration, the court be of opinion that the trustee was guilty of a breach of duty, or of unwarranted delay, no commission for its services in connection with the stock dividends should be allowed. *Commonwealth Trust Co. Case*, 331 Pa. 569.

The trustee is not entitled to commissions upon the cash dividends received and distributed upon these shares during the period of their improper retention. It cannot rightfully claim compensation for services in connection with the self-imposed trust created by its failure to distribute the stock dividends as income to the life tenants: *Stearly's Appeal*, 38 Pa. 525; *Stokes's Appeals*, 80 Pa. 337; *Hepburn's Estate*, 1 W. N. C. 601. There was no acquiescence on the part of such beneficiaries, because of their insufficient knowledge of the facts concerning the stock dividends listed by the trus-

tee as corpus. The court below, therefore, should have surcharged the trustee for these commissions which already have been taken.

The decree of the court below is reversed, and the record is remanded for further proceedings in accordance with the views herein expressed. Costs in these proceedings to be paid by the appellee.